## Case No. 14,610.

### UNITED STATES v. BLOCK 121.

[3 Biss. 208;[1] 5 Chi. Leg. News, 302.]

Circuit Court, N. D. Illinois. June, 1872.

EMINENT DOMAIN — CONDEMNATION — BY WHOM PROCEEDINGS INSTITUTED—CONFLICTING CLAIMANTS—COURTS—FEDERAL JURISDICTION.

1. A proceeding under an act of congress to condemn property is a "suit of a civil nature at common law or in equity," within the meaning of the judiciary act [1 Stat. 73].

[Cited in A Quantity of Manufactured Tobacco, Case No. 11,499.]

[Cited in State v. Jennings, 56 Wis. 120, 14 N. W. 30.]

2. The construction of that clause cannot be limited to such suits as were known at the time of the passage of the act. Whenever an act is passed which authorizes the commencement of a suit, jurisdiction of the case is thereby vested in the federal courts, if the character of the parties warrants it, and it comes within the meaning of the statute. The grant of power in this act is prospective.

3. The clause, "suits of a civil nature at common law or in equity," was used in contradistinction to admiralty and criminal cases. It does not restrict the jurisdiction to old and settled forms, but includes all suits in which legal rights are to be ascertained and determined.

4. Congress has power to clothe the federal courts with authority to proceed for the condemnation of property in conformity with a particular state statute.

5. It was the intention of congress in this act to give this court jurisdiction of the condemnation proceedings therein contemplated.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

6. Though the officers of the government had stated to the owners of the ground the price which the government was willing to give, yet if other parties had liens and claims against the property, which they were not willing to surrender, condemnation proceedings are necessary.

7. The secretary of the treasury being the mere officer of the government, when proceedings are instituted by him under a special law they become necessarily proceedings on the part of the United States; and although the petition be filed by the district attorney, it is within not only the spirit, but the letter of the acts of congress.

This was a petition filed by the district attorney, in the name of the United States, for the condemnation of block 121, school section addition to Chicago, commonly called the "Bigelow Block." The various parties claiming an interest in the land or any part of it, whether as owners of the fee, tenants, or by mortgages, judgments, liens, or otherwise, were made parties defendant, and commissioners appointed by the court, in conformity with the state statutes, who heard the evidence as to the value of the property, the damages to be assessed, and the rights and interests of the respective parties. On the coming in of this report some of the parties in interest moved to dismiss the proceedings on the ground that the court had no jurisdiction. These proceedings were instituted for the purpose of obtaining ground for the erection of a custom-house and government buildings in Chicago, in pursuance of the act of the legislature of Illinois of December 14th, 1871, and the act of congress of December 21st, 1871.

The act of the legislature of Illinois (2 Gross' St. p. 438) is as follows:

"Section 1. The United States shall have power to purchase or condemn, in the manner prescribed by law, upon making just compensation therefor, any land in the state of Illinois required for custom-houses, arsenals, light-houses, national cemeteries, or for other purposes of the government of the United States.

"Sec. 2. The United States may enter upon and occupy any land which may have been or may be purchased, or condemned, or otherwise acquired, and shall have the right of exclusive legislation and concurrent jurisdiction together with the state of Illinois, over such land and the structures thereon, and shall hold the same exempt from all state, county and municipal taxation."

The act of congress of December 21, 1871 (17 Stat. 24), provides, "that the secretary of the treasury be, and he hereby is authorized and directed to purchase, at private sale or by condemnation, in pursuance of the statutes of the state of Illinois, the remainder of the square of ground not now belonging to the United States, on which the customhouse and post-office building, lately destroyed by fire in the city of Chicago, was situated, if the same can be obtained either by private purchase or condemnation, at what, in his judgment, is a fair and reasonable price for the ground; but if not, then it shall be his duty to purchase, in one of the ways aforesaid, one of the twenty-four squares of ground nearest to and immediately surrounding the square on which said building destroyed by fire was located. * * * * Provided, that no money hereby appropriated shall be used or applied for the purpose until a valid title to the land for the site of such building shall be vested in the United States, and until the state of Illinois shall cede its jurisdiction over said site, and shall also duly release and relinquish to the United States the right to tax or in any way assess said site or the property of the United States that may be thereon during the time that the United States shall be or remain the owner thereof."

Edward Roby, for the motion.

There are large classes of cases wholly within this judicial power, which it is held the courts of original jurisdiction cannot entertain, notwithstanding the clear implication of the constitution. Cary v. Curtis, 3 How. [44 U. S.] 245; Insurance Co. v. Ritchie, 5 Wall. [72 U. S.] 541; McIntire v. Wood, 7 Cranch [11 U. S.] 504; McClung v. Silliman, 6 Wheat. [19 U. S.] 604. Though state forms may sometimes be adopted by the courts for convenience, state laws cannot confer jurisdiction, nor prescribe the modes or forms of proceeding in federal courts. Riggs v. Johnson Co., 6 Wall. [73 U. S.] 178, 179, 195; Bronson v. Kinzie, 1 How. [42 U. S.] 314; cases cited in Brightly, Fed. Dig. tit. "Execution," 1; Boyle v. Zacharie, 6 Pet. [31 U. S.] 648, 658.

J. O. Glover, U. S. Dist. Atty., and L. H. Boutell, Asst. U. S. Dist. Atty.

The United States circuit court has original cognizance of all suits of a civil nature at common law, when the United States are plaintiffs or petitioners. Act Sept. 24, 1789, § 11 (1 Stat. 78); Const. U. S. art. 3, § 2; Act March 3, 1815, § 4 (3 Stat. 245). The act of March 3, 1815, gives the United States jurisdiction to sue, irrespective of the amount in controversy. Postmaster General v. Early, 12 Wheat. [25 U. S.] 136. By cases in law are to be understood suits in which legal rights are to be ascertained and determined, in contradistinction to those where equitable rights alone are to be recognized, and equitable remedies administered, or where the proceeding is in the admiralty. Parsons v. Bedford, 3 Pet. [28 U. S.] 447; Robinson v. Campbell, 3 Wheat. [16 U. S.] 212. Parties entitled to sue in the courts of the United States, are in general entitled to pursue, in such courts, all the remedies for the vindication of their rights which the local laws of the state authorize to be pursued in its own courts. Such is a statutory proceeding for partition. Ex parte Biddle [Case No. 1,391], Story, J.; Mason v. Boom Co. [Id. 9,-232]; Bank of Hamilton v. Dudley, 2 Pet. [27 U. S.] 492. The legislature of a state can-

not, by enacting a special remedy in their own county courts, take away the privilege conferred by the constitution and laws of the Union upon citizens of other states, to sue in the courts of the United States. Mason v. Boom Co. [supra]. Consult also on the general question of jurisdiction, 1 Abb. U. S. Prac. 230–234; Parsons v. Lyman, 32 Conn. 566; The St. Lawrence, 1 Black [66 U. S.] 522; The Orleans v. Phobus, 11 Pet. [36 U. S.] 175; Le Roy v. Nathan, 22 How. [63 U. S.] 132; Toland v. Sprague, 12 Pet. [37 U. S.] 300; Watson v. Tarpley, 18 How. [59 U. S.] 517; U. S. v. Peters, 5 Cranch [9 U. S.] 115; Clark v. Smith, 13 Pet. [38 U. S.] 195; Parker v. Overman, 18 How. [59 U. S.] 137; Clark v. Sohier [Case No. 2,835]; Lorman v. Clarke [Id. 8,516]; Strachen v. Clyburn [Id. 13,520].

Before DRUMMOND, Circuit Judge, and BLODGETT, District Judge.

DRUMMOND, Circuit Judge. It may be conceded that there must be an act of congress which has given the court jurisdiction, either by express words or by necessary implication. The second section of the third article of the constitution states that the judicial power shall extend, among other cases, "to controversies to which the United States shall be a party." This is undoubtedly a controversy to which the United States is a party. Under this grant of power congress legislated at a very early day, and by the act of September 24th, 1789, commonly called the judiciary act, declared that the circuit court should have cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds the sum of $500, and the United States are plaintiffs or petitioners. This grant was undoubtedly prospective. At that time there was very little jurisdiction given by express enactment to the courts of the United States, and in fact this act created the courts of the United States, and by virtue of it the courts have, up to this time, cognizance of many cases.

So that this act was intended, whenever it occurred that a suit at law or in equity could be commenced, and the matter in dispute, exclusive of costs, amounted to the sum of $500, to allow the United States, as plaintiffs or petitioners, to bring it in circuit court of the United States. Therefore, irrespective of the act of March 3, 1815, the effect of which it is not necessary for us here to consider, the only question is, whether this is, within the meaning of this statute, a suit of a civil nature at common law or in equity, and of the value of $500, and the United States are plaintiffs or petitioners. The value, of course, is greater than the amount indicated. The United States are petitioners, and thus two of the conditions of the statute are complied with.

The only remaining condition is, is it a suit of a civil nature at common law or in equity? It is contended that the act does not comprehend any other suit of a civil nature at common law or in equity, except such suits as were known at the time of its passage. If that is the true construction of the statute, then there might be some doubt whether the court would have jurisdiction. But that has not been the construction which has been given to the statute. For it must be now considered as the settled doctrine of the supreme court of the United States, that whenever any statute is passed which authorizes the commencement of a civil suit, and under which a suit can be maintained, that then, although it may not have been known in precisely that form to the common law, this statute vests in the circuit court jurisdiction of the case, and it comes within the meaning of the law, being a suit of a civil nature at common law or in equity. Take the case of an action brought on a bond; it may be that the action is of such a character that at common law it could not be maintained; but if the statute authorizes the maintenance of the action, then the act of 1789 vests in the court jurisdiction of the case, without any express words; and so liberal has been the construction given to this statute, in cases of even criminal procedure, where, by that act, the circuit courts have concurrent jurisdiction with the district courts; and by subsequent legislation—as by the act of February 13, 1862 (12 Stat. 339), the district court, by the language of the statute, was alone clothed with jurisdiction of such cases; that the supreme court of the United States held that they could go back to the act of 1789, and sustain jurisdiction by virtue of that law in the circuit courts. U. S. v. Holliday, 3 Wall. [70 U. S.] 407.

A question in principle similar to the one arising in this case was discussed in a case cited at the argument,—Ex parte Biddle [Case No. 1,391]. That was a proceeding by partition confessedly existing only by virtue of the laws of Massachusetts, and the court uses this language: "Parties entitled to sue in the courts of the United States are, in general, entitled to pursue in such courts all the remedies for the vindication of their rights which the local laws of the state authorize to be pursued in its own courts."

This has been sanctioned by the supreme court of the United States (Parsons v. Bedford, 3 Pet. [28 U. S.] 433); and we cite it for the purpose of showing what is the meaning of the words used in the act of 1789, "suits at common law." The court is commenting on an amendment to the constitution proposed by congress at its first session, where those words are used: "When, therefore, we find that the amendment requires that the right of trial by jury shall be preserved in suits at common law, the natural conclusion is, that this distinction was

present to the minds of the framers of the amendment. By common law, they meant what the constitution denominated in the third article 'law,' not merely suits which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered; or where, as in the admiralty, a mixture of public law and of maritime law and equity was often found in the same suit," etc.

Now, it would follow, if this reasoning is correct, that the language in the 11th section of the act of 1789, "all suits of a civil nature at common law or in equity," is used in contradistinction to suits in admiralty, the exclusive jurisdiction of which was vested by the same act in the district court, and also to criminal cases, jurisdiction of which was conferred by other sections. So that if this be true, and by a suit of a civil nature at common law or in equity is meant not the old and settled proceedings as recognized at common law or in equity, but suits in which legal rights are to be ascertained and determined, in contradistinction to cases in admiralty or criminal law, then this application is within the meaning of the 11th section of the act of 1789. It is a controversy to which the United States is a party and petitioner, and it is immaterial for the purposes of jurisdiction whether the forms of proceeding are those in ancient use, for they may be changed by statute or moulded as a court of chancery will always mould the forms of proceedings to suit the exigencies of the case.
. If it be a suit at common law, and the 7th amendment to the constitution applies to it, then it is competent for the court to provide that there shall be a trial by jury. The fact that there must be a trial by jury can have no influence upon the question of the jurisdiction of the court, provided it is fairly deducible from the section itself to which reference has been made, because the court in various ways, either as a court at common law or a court exercising exceptional jurisdiction under statutes, can provide for the protection of the rights of the citizen, which that section giving trial by jury was intended to secure.

Again, what was the intention of the act of congress and of the legislature? Was it contemplated that there was to be no remedy under these acts? Did the act of congress mean nothing when it said that the secretary of the treasury might purchase, at private sale or by condemnation, a site suitable for the public buildings, and when the legislature said the United States might so purchase or condemn? How so purchase or condemn? The language of both statutes must necessarily be construed, and the words of the act of congress are, "in pursuance of the statutes of Illinois;" it is in that way that it must be done. And there can

be do doubt of the power of congress to clothe the courts of the United States with authority to proceed in conformity with a particular statute of a state for the condemnation of property. The counsel who made the objection, and who argued the motion with zeal and ability, conceded that the United States had what is called the right of eminent domain; that is to say, that it was competent for the United States to condemn land for public use. However this may be, there can be no question of the right, when it is conferred, not only by an act of congress, but by an act of the legislature, both having the same general meaning and intent. Then if this be so, it certainly was never supposed by the law-maker, either state or national, that acts were passed which had no operation or effect. There must be somewhere the right to proceed in conformity with these statutes to condemn land for the public use, and it must exist either by procedure in the state court or in the courts of the United States. It was insisted by counsel that there was no authority to proceed in the state court. If so, and there was no authority to proceed in the courts of the United States, then these acts were merely nugatory, having no sort of effect upon the question of condemnation. But it was intended there should be a proceeding either in the state court or in the courts of the United States. If in the state court, then the language of the 11th section of the act of 1789 applies: "The circuit court shall have original cognizance concurrent with the courts of the same states." So that, upon the whole, we can not doubt that it was the intention to give to some court jurisdiction of this proceeding; and whether it was the state or national court, is immaterial. By virtue of the 11th section of the act of 1789, jurisdiction is given, not by express language, but it follows as a necessary means to accomplish the ends which congress had in view. But it is said that the language of the local law requires that the particular lot of ground shall be, in the first place, selected; and that has not been done by the secretary of the treasury.

In one sense that is true. It has not been located, but we apprehend that when the act of the legislature was passed, authorizing the United States to purchase or condemn land, it meant in conformity with the law which was in force at the time. It will be recollected that the act of the 7th of March, 1872, recapitulated the act of the 4th of February, and at the time that this amendment was passed the act of congress was in force, and this act of congress did not make it compulsory upon the secretary of the treasury to take the land where he had commenced proceedings for condemnation. It gave him the option. The proceedings, therefore, must be instituted and carried on subject to the previous act of congress, and subject to the power of the secretary of the treasury to

declare that he would not take a particular lot or tract of land at the price designated. And the discretion this act of congress gave the secretary of the treasury has, as a matter of fact, been exercised already in the proceedings relative to the other block, and he has refused to take the property at the price fixed.

It is urged that this block has been obtained by purchase, and that the secretary of the treasury has stated to the owners of the land that the United States is willing to give a particular price. That may be, but by the terms of the law it is necessary that the United States should have complete title to the land, and the proceedings show that there are many incumbrances upon the land which confer rights which the owners have no authority in any way to interfere with. Parties have rights under contract with the owners of the block which even this act of congress could not affect, and therefore, conceding that the government has agreed to give for this block a particular price, still proceedings for condemnation were necessary in order to foreclose the rights of all the parties. If they had agreed to the price which the government was willing to give them, there would be no necessity for the proceedings by condemnation. But they have not manifested that willingness, and even now, after the commissioners have fixed upon the price for each interest, they are not content. How much can they possibly get out of the government? That is the question in all these cases.

Then it was indispensable, we think, in order that there should be a perfect title to the United States, that proceedings for condemnation should be initiated and should go on. Where so many interests are comprehended under the law, we do not see how it was possible to obtain title without proceedings for condemnation.

Some objection was taken to the form of the proceedings, on account of the technical phraseology of the act of congress: "That the secretary of the treasury be, and he hereby is, authorized to purchase at private sale, or by condemnation, in pursuance of the statute of Illinois," a particular tract of land. Now the secretary of the treasury is the mere officer of the government, and when proceedings are instituted by him under this law, they become necessarily, from the very nature of the case, proceedings on the part of the United States, and the United States are the petitioners; and although the petition is filed by the district attorney, it is filed in the name of the United States, and for their benefit, and therefore it is within not only the spirit but the letter of the act of congress. The owners resist the right of the United States to have this land at the price which the government is willing to pay them for it. That is the controversy this court is called upon to determine, and we state in conclusion, that the principles which have

several times been decided by the supreme court of the United States, are re-affirmed in a very recent case: Railway Co. v. Whitton, 13 Wall. [80 U. S.] 270. So that if it be conceded that the United States has the right of eminent domain to condemn land for public use, then, if there were nothing but the statutes of the state in force, there would seem to be not much question as to the jurisdiction of the court; but in connection with the act of congress, there can be no room for doubt. The motion to dismiss will, therefore, be overruled.