81 71
92 631

81 71
95 221

81 71
101 405

81 71
103 445

# Richmond.

## BALTIMORE & OHIO R. R. CO. v. McKENZIE.

### NOVEMBER 12th, 1885.

1. PRINCIPAL AND EMPLOYES—*Negligent injuries—Liability—Exceptions.*—As a general rule, one entering the service of another takes upon himself the ordinary risks of the negligent acts of his co-employes, and principal is not liable to his employes for the fault of their co-employes. But principal and his representatives must be free from negligence.

2. IDEM—*Representatives—Negligence—Notice.*—Employe charged with duties that the law makes it incumbent on principal to perform, is regarded, *pro hac vice*, as the representative of principal, and his negligence is the negligence of principal, and notice to him is notice to principal.—*Railway* v. *Ross*, 112 U. S. 377; *Moon* v. *R. & A. R. R.*, 78 Va. 745.

3. NEGLIGENCE—*Contributory—Onus probandi.*—Plaintiff must be presumed to have been without fault; and if defendant relies on the defence of contributory negligence, he must prove it.

4. IDEM—*Defendant liable.*—If defendant's negligence was the proximate cause of the injury, the plaintiff, being without fault, is entitled to recover, even though by his attempt to escape he contributed to his own injury.

5. IDEM—*Mixed questions—Instructions.*—What is negligence is a question of mixed law and fact, involving (1) whether the particular act has been done or omitted, and (2) whether the doing or omitting of the particular act was a breach of duty. *Dunn* v. *R. R. Co.*, 78 Va. 645. Therefore, it was proper to instruct the jury that "if defendant knew, or by reasonable diligence might have known, on the evening before the collision which caused the injury, that the rock, whose fall caused the collision, was dangerous, then the defendant's failure to secure or to remove the rock was negligence."

6. IDEM—*Idem—Co-employes—Instructions.*—Whether plaintiff and defendant are co-employes, or rather, whether the negligent employe was the representative of the defendant when the injury was received, is a question of mixed law and fact, to be decided by the jury under suitable instructions from the court, and it is not proper to instruct the jury that the plaintiff and the negligent servant did on that occasion stand in the relation of co-employes, or did not stand in the relation of subordinate and superior.

7. IDEM—*Instructions—New trial.*—It is not ground for new trial that instructions are given, when, independent thereof, the verdict could not properly have been otherwise than for the plaintiff, and the defendant, therefore, in any view, was not prejudiced.—*Snouffer* v. *Hansbrough*, 79 Va. 166.

Argued at Staunton and decided at Richmond.

Error to judgment of circuit court of Shenandoah county, in an action of trespass on the case, wherein McKenzie was plaintiff, and the Baltimore & Ohio Railroad Company was defendant. The object of the action was to recover damages for injuries received by the plaintiff while in the performance of his duties as an express messenger in the employment of the defendant company. The injury so received resulted in the loss of the plaintiff's left arm, and was occasioned by a collision of the train, upon which the plaintiff was, with a large rock which had fallen from the side of a cut upon the defendant's track. It was claimed, and the jury found, that the collision was caused by the negligence of the defendant's agents, without fault on the part of the plaintiff, and the judgment in accordance with the verdict having been rendered in the plaintiff's favor, the defendant applied for and obtained a writ of error and *supersedeas.*

Opinion states the case.

*Sheffey & Bumgardner*, for plaintiff in error.

*H. C. Allen* and *W. R. Alexander*, for the defendant in error.

LEWIS, P., delivered the opinion of the court.

It is a general rule of law, well settled in England and mostly in this country, that one who enters the service of another, takes upon himself the ordinary risks of the negligent acts of his fellow-servants in the course of the employment. In other words, the master is exempt from liability to his servants for the fault of their fellow-servants.

The leading case on the subject is *Farwell* v. *Boston & Worcester Railroad Corporation*, 4 Met. (Mass.), 49, and the rule, as there announced by Chief-Justice Shaw, has since been acted on in numerous cases, English and American. See *Randall* v. *Baltimore & Ohio Railroad Co.*, 109 U. S. 478, and cases cited.

There are exceptions, however, to the general rule as well established as the rule itself. Thus the master, to be exempt from liability, must himself have been free from negligence. He is bound to use ordinary care in supplying and maintaining proper instrumentalities for the performance of the work required, and generally to provide for the safety of the servant, in the course of the employment, to the best of his skill and judgment. And if he fail in the performance of his duty in this particular, he is as liable to the servant as he would be to a stranger. *Hough* v. *Railway Co.*, 100 U. S. 213; *Wabash Railway Co.* v. *McDaniels*, 107 Id. 454; 2 Thompson on Negligence, 985–6, section 5.

And where injuries are caused by the negligence of a servant who is charged with the performance of duties which, by law, it is incumbent on the master to perform, such servant is regarded as the representative of the master, and, in legal contemplation, his negligence is the negligence of the master.

Judge Cooley states the rule thus: The master "is not responsible to one person in his employ for an injury occasioned by the negligence of another in the same service, unless generally,

or in respect of the particular duty then resting upon the negligent employe, the latter so far occupied the position of his principal as to render the principal chargeable for his negligence as for personal fault." Cooley on Torts, 564.

In *Lewis* v. *St. Louis & Iron Mountain Railroad Co.*, 59 Mo. 495, it was held that where the servant of a railroad corporation is injured by defects in the machinery or track of the company, the latter cannot defend on the plea that such defects resulted from the negligence of fellow-servants. That was an action to recover damages for injuries sustained by a brakeman in consequence of an excavation alongside the defendant's track; and in the course of its opinion the court said: "It was the duty of the section-foreman to keep the track in repair, and see that everything was right. He was notified of the existence of the hole, and complaint was made to him about it; but he negligently omitted to act, and failed to remedy the defect. Notice to him was notice to the company, and his negligence was the company's negligence."

In the recent case of *Chicago, Milwaukee & St. Paul Railway Co.* v. *Ross*, 112 U. S. 377, it was decided by the Supreme Court of the United States that the defendant company was liable to the plaintiff, who was a brakeman in its employ, for injuries resulting from the negligence of the conductor of a freight train, upon which the plaintiff was employed. "In no proper sense of the terms," said the court, "is he (the conductor) a fellow-servant with the fireman, the brakeman, the porters and the engineer. The latter are fellow-servants in the running of the train under his direction; as to them and the train, he stands in the place of, and represents the corporation."

The same doctrine had been previously held by this court in *Moon's administrator* v. *Richmond & Alleghany Railroad Co.*, 78 Va. 745. In that case the death of the plaintiff's intestate, who was a brakeman, was caused by the concurrent negligence

of the conductor, under whose direction he was, and the agents of the company having in charge the repair of the track, and it was held that the plaintiff was entitled to maintain his action.

In delivering the opinion of the court, Judge Fauntleroy said: Inasmuch as "the conductor was not a fellow-servant of Moon, but his superior, and in a position wherein he exercised discretionary authority, and was charged with certain duties for the proper performance of which the law holds the company itself responsible, any negligence on his part in this behalf is the negligence of the company itself." And further he said: "Herndon, the section master,    *    *    could in no sense be regarded a fellow-servant in the same common employment or department of service with Moon, who was a train hand and brakeman. They were not co-employes, thrown together in a common duty, and having opportunity to observe and judge of the habits and qualifications of each other." See also note to the case of *C. M. & St. P. R. R. Co.* v. *Ross,* 17 Am. and Eng. R. R. Cas. 501, where the cases are collected.

Applying these principles to the present case, the first question is, whether the circuit court erred in admitting the evidence of the witness Copp.

The substance of the witness' statement was: That while he, Copp, was employed as a section hand by the defendant company, he on one occasion remarked to Thomas Flynn, then the section boss, that if he did not take out that rock—meaning the rock that fell—"there would be a thundering crash some day;" that he did not know whether Flynn heard him or not, but supposed he did, as "the remark was made near enough for him to hear it." The defendant excepted to this statement, on the ground that the remark to Flynn was not notice to the company, and further because it was made, as the witness testified, thirteen years before the casualty occurred.

And the second question is, whether the conversation between

the witness Reddy and Foster, an employe of the company, on the evening preceding the day on which the casualty occurred, was competent evidence, as held by the circuit court.

It appears that Foster was employed as a night-watchman, and as such to watch the cut from the side of which the rock fell; that on the occasion referred to the witness remarked to Foster, just as the latter was leaving his house for the cut, that he had that evening seen water running under and around the rock, and that *the rock was dangerous;* that Foster then started with his lantern for the cut, saying to the witness that if the rock was dangerous he would not return, otherwise he would, and that he remained in the cut till next morning about six o'clock. It also appears that the track-walker passed through the cut twice that morning between six and seven o'clock, examined it on both sides and found it, in his judgment, in good condition; that three trains of the company passed through the cut that morning, the last at about ten or eleven o'clock, and that the collision occurred at 12:57 that day.

We are of opinion that neither exception is well taken, and that the evidence was properly admitted to be weighed by the jury. Both Flynn and Foster were supervising agents of the company, duly "employed with its authority"—the one a section-master, the other a night-watchman, whose duty it was to guard the track at the point where the rock fell. They were thus charged with the performance of duties which, by law, it was incumbent on the company to perform; and being, to that extent, the representatives of the company, notice to them was notice to the company itself. To hold otherwise, would be to hold that a corporation, whose lines—as we know from the record in the present case—extend into several States of the Union, and over which numerous employes are daily carried, is, so far as the guarding of its track is concerned, virtually without a representative at all. It would be to declare that to

be law, which is consistent neither with reason nor sound policy, and the evil consequences of which it is easy to imagine.

But if this be not the correct view, and if in the present case the company is not affected by notice to Flynn and Foster how, it may be asked, could notice affect it? Would notice to an executive officer suffice? And if so, to whom? We are at a loss to answer. On the other hand, let it once be settled that the humblest watchman who walks the track is, within the scope of his employment, the representative of the company, that he has eyes to see, ears to hear, and lips to communicate to his superiors the knowledge he acquires as to the condition of the track, or of impending danger, and the law upon this important subject will be placed upon such a footing as that none can misapprehend, and all reasonable men must approve it.

That such is the law is clear, we think, not only upon reason, but from the authorities already referred to; from which it will appear, that, in cases like the present, the proper enquiry is, not what is the rank of the servant, but does he represent the company? And if he does, then the result is the same— no matter whether his rank be high or low—whether he be the president of the company, or the conductor of a train, a section-master, or a common watchman.

The company, then, having received notice of the threatened danger, it thereupon became its duty to take the requisite steps to avert it; and having negligently failed to do so, it is answerable for the consequence.

The next question related to the instructions which were given to the jury at the instance of the plaintiff. They are as follows:

"I. The court instructs the jury that the plaintiff, W. J. McKenzie, is presumed to have exercised due and proper care at the time of the wreck at which he was injured, and the burden of proving he was negligent is upon the defendant.

"II. Even if the jury should believe from the evidence that the plaintiff jumped from the defendant's car at the time of the wreck, yet if they further believe from the evidence that said plaintiff did so under a well-grounded fear of danger to his life or limbs, plaintiff is as much entitled to recover in this action, so far as his jumping is concerned, as if he had received the injuries complained of while in defendant's car, although they may further believe from the evidence that if he had remained in the car he would not have been injured.

"III. Even though the jury may believe from the evidence that the plaintiff received the injuries complained of by reason of his jumping from the defendant's car at the time of the wreck, yet if the jury further believe from the evidence that the plaintiff was so stunned and bewildered by the shock of the collision as to render said plaintiff unconscious of what he was doing, then the jury are instructed that said jumping was not such negligence as to prevent plaintiff from recovering damages any more than if he had received said injuries complained of while in defendant's car, although the jury may further believe from the evidence that no injury would have been received by him if he had remained in said car.

"IV. If the defendant claims exemption from liability to plaintiff because of plaintiff's standing in the relation of a servant to it, then, in order to exempt the said defendant from such liability, said defendant must not have been guilty of negligence, as in the first instruction for defendant, as given by the court, and the proof of such negligence is on the plaintiff."

We are of opinion that these instructions correctly propound the law applicable to the case, and were properly given. If the defendant relied on the defence of contributory negligence, it was incumbent on it to prove it, and in the absence of satisfactory proof to establish such defence, the plaintiff must be presumed to have been without fault. This, indeed, is not dis-

puted. And the second and third instructions are equally un-exceptionable. The principle, as declared in numerous cases, is thus stated by Thompson: "If A, through his negligence or fault, puts B in a position of immediate danger, real or apparent, and B, through a sudden impulse of fear, makes a movement to escape the danger, and, in so doing, accidentally receives another and different injury from that threatened by the negligence of A, he may recover damages of A; for A's negligence or fault is the proximate cause of his injury. Thus, a coach suddenly breaks down going at a moderate gait on a level road. A passenger seated upon the top, becoming alarmed, leaps to the ground, and thereby sustains an injury. If he had remained seated, he would not have been injured. The break-ing of the coach is the proximate cause of the injury, and if this happened through the negligence of the proprietor, he must pay damages; otherwise not." And in a foot note the author adds: "It is upon like ground that the criminal law excuses homicide when committed under a supposed necessity of self-defence, in the presence of words and demonstrations which threaten death or great bodily harm, although, in fact, no harm was intended." 2 Thompson on Negligence, p. 1092, sec. 8.

The same principle is laid down in Sherman and Redfield on Negligence, section 28, as follows: "The plaintiff's right to recover is not affected by his having contributed to his injury, unless he was in *fault* in so doing. It is possible for the plain-tiff not only to contribute to, but even to be himself the imme-diate cause of, his own injury, and yet to recover compensation therefor. If his share in the transaction was innocent, and not incautious, it furnishes no excuse for the defendant. Thus, where by the negligence of a railroad company the train was run into such danger that, in order to escape from greater peril, the plaintiff jumped off, and thus injured himself, he

recovered damages against the company." See also *Stokes* v. *Saltonstall,* 13 Pet. 181.

This statement of the law was cited with approbation by this court in *Richmond and Danville Railroad Company* v. *Morris,* 31 Gratt. 200, which was an action by a passenger against the company; but we apprehend the principle equally applies to a case like the present.

The fourth instruction, taken in connection with the first that was given for the defendant, is in accordance with the views already expressed in this opinion, and is entirely right.

At the trial, the defendant moved the court to instruct the jury, among other things, as follows: "Servants are engaged in a common employment when each of them is occupied in service of such a kind as that all of them in the exercise of ordinary sagacity ought to be able to foresee, when accepting their employment, that it may probably expose them to the risk of injury, in case any one of such servants is negligent. Thus, among others, an expressman running on a master's trains and engaged in his business (thereon), is in the same common employment with the engineman, fireman, brakeman, baggage-master and other inferior servants, doing the master's business on such trains, under the control of the conductor of the train."

This instruction, however, the court refused to give without modification; and as modified and given, it reads as follows: "For all ordinary hazards, incident to the business, the servant takes the risk, and is presumed to enter into the master's service with full knowledge of all the ordinary risks and hazards incident to the business; and among such risks and hazards are those arising out of the negligence of his fellow-servants engaged in the same department, and acting under the same immediate direction; the hazardous character of the business itself, the liability of the track to be unexpectedly obstructed

by land-slides and rock-slides from natural causes, the liability of cuts and rocks therein, in the course of years and under exposure to the weather, gradually to disintegrate and unexpectedly to slide down upon the track; and no damages can be recovered by any servant against the master for injuries from such causes, except where the injury results from some fault or negligence of the master himself, or some agent representing him in the matter. But if the jury believe from the evidence that the plaintiff was not in the department of the defendant's service having in charge the care of the track and cuts of the defendant's railway, and that prior to the fall of the rock, on the evening and night previous, resulting in the wreck of the train and injury to the plaintiff, the appearance of the rock, and the earth and rocks at and about it, and the kind of weather, were such as to create reasonable apprehension of its falling or sliding upon the track, and that the attention of an employe or employes of the defendant, when engaged in the care of said track, at and about said rock, was called to said rock, they are instructed that the knowledge of the employe of any such dangerous indications of the sliding upon the track of said rock, was the knowledge of the defendant through its employe or employes representing it, and imposed upon the defendant the duty of providing against said dangerous indications by removing said rock or securing it in its place in the bank, or, if the defendant in any other way knew of said dangerous indication, or might have known thereof by the use of reasonable care and diligence, the failure to remove or secure said rock was negligence."

Objection is made to the modified instruction, on the ground that the question of negligence was not left to the jury, but was decided by the court itself. We do not think so. The jury were instructed that *if they believe from the evidence* that the plaintiff was not in the department of the defendant's service

having in charge the care of its track and cuts along its line; that on the evening previous to the fall of the rock, its appearance and immediate surroundings and the weather were such as to create a reasonable apprehension of its falling or sliding upon the track, and that the attention of an employe of the defendant having in charge the care of the track at that point, was called to the dangerous condition of the rock, then that the knowledge of such employe was the knowledge of the defendant, and imposed upon it the duty of providing against the threatened danger, by removing the rock or securing it in its place, and that the failure to do so was negligence, the same as if the defendant knew of the condition of the rock in any other way, or might have known thereof by the use of reasonable care and diligence.

Now, it is to be observed that the question of negligence is a mixed question of law and fact. "It includes two questions: 1. Whether a particular act has been performed or omitted; and 2. Whether the performance or omission of this act was the breach of a legal duty. The first of these is a pure question of fact, the second a pure question of law." Sherman and Redfield on Negligence, section eleven. Therefore the circuit court properly instructed the jury, in effect, that if the evidence showed that on the evening previous to the falling of the rock, the defendant knew, or if at any time prior thereto by the use of reasonable diligence it might have known, that the rock was dangerous, then, that the measure and standard of its duty was fixed and defined by law, and that the defendant's failure to secure or remove the rock was the breach of a legal duty, or, in other words, negligence, for which it was liable. See also 2 Thompson on Negligence, p. 1236, section eleven; *Railroad Co.* v. *Stout*, 17 Wall. 657.

And what is here said must be taken in connection with the instruction almost immediately following, which is as follows:

"The jury are further instructed, that, although they may believe from the evidence that the rock or rocks had been imbedded in the side of the cut, and fell on the track after the passage through said cut of three trains during the morning of the 6th of February, 1884, one of said trains having passed through between ten and eleven o'clock, and between two and three hours before said rock was struck by said engine on said track, such fact, of itself will not entitle the plaintiff, though injured by the collision of the engine and train with said rock, to recover damages in this action, and he cannot recover such damages unless the jury believe from the evidence that such rock gave indications of falling, to which the attention of the defendant's employe or employes to said indications of falling was called *in time* for its removal or securing it, and that said rock fell by reason of the negligence of the defendant in not securing or removing said rock."

The court also refused to give the third instruction asked for by the defendant, which asserts the same doctrine contained in that part of the first instruction which we have seen was rejected, but with rather more emphasis, namely, that the plaintiff being a fellow-servant of the engineer of the train, could not recover if the injury was caused by the negligence of the engineer alone.

We are of opinion that this instruction was properly refused. At the same time, it may, perhaps, be conceded, in the absence of satisfactory evidence to vary the case, that where a railroad company, as is the case here, does its own express business, one who accepts service with the company as an express messenger, is to be considered as a fellow-servant of the engineer and other subordinate employes engaged in operating the trains of the company, on which he is carried while performing this duty as such express messenger; and this, notwithstanding its express department is a distinct department of the company's

business. For they are employed and paid by a common employer. Their duties bring them together at the same place; that is, on the same trains, and at the same time. They are under the direction of the same conductors who control the movements of the trains; and hence it may fairly be said that when the express messenger enters the service, he can easily foresee, and therefore "takes upon himself, the natural and ordinary risks and perils incident to the performance of such service," including the perils arising from the negligence of those engaged in operating the trains, and that his "compensation is adjusted accordingly." *Farwell* v. *Boston, &c., R. R. Co., supra*; *Clark's administrator* v. *Richmond & Danville R. R. Co.,* 78 Va. 109.

In *McAndrews* v. *Burns,* 29 N. J. Law, 117, Dalrimple, J., defined the relation comprehended by the term fellow-servant as follows: "A fellow-servant I take to be any one who is controlled by the same master. Common employment is service of such kind, that, in the exercise of ordinary sagacity, all who engage in it may be able to foresee, when accepting it, that through the negligence of fellow-servants, it may probably expose them to injury. The ground on which rests the exemption of the master from liability to the servant for negligence of a fellow-servant engaged in a common employment, is, that the servant is presumed to contract in reference to the risk incurred."

But the rule of exemption does not apply, as we have seen, where the injury is caused by the negligence of an agent, whose position is that, not of a fellow-servant, but of a representative of the employer, or vice-principal.

And it has been held in respect to railway service, that it is not necessary that the servant injured, in order to exempt the company from liability within the rule, should have been engaged in the running operations of the road. Thus, in

*Morgan* v. *Vale of Neath Railway Co.*, 5 Best & S., 570 (117 Eng. C. L., 586, 723), Blackburn, J., said: "There are many cases where the immediate object on which the one servant is employed is very dissimilar from that on which the other is employed, and yet the risk of injury from the negligence of the one is so much a natural and necessary consequence of the employment which the other accepts, that it must be intended in the risks which are to be considered in his wages. I think that whenever the employment is such as necessarily to bring the person accepting it into contact with the traffic of the line of railway, risk of injury from the carelessness of those managing that traffic, is one of the risks necessarily and naturally incident to such employment, and within the rule."

That was an action by a carpenter in the employ of the company, to recover for injuries caused by the negligence of the company's servants, in turning a locomotive on a turntable, near to which the plaintiff was at work; and it was held by the court of Queen's Bench, and affirmed in the Exch. Chamber, that he was not entitled to recover.

But conceding all this, the fact remains, that the question whether the plaintiff in the present case and the engineer of the train were fellow-servants, within the rule, is a mixed question of law and fact—that is, a question to be determined by the jury on the facts, under suitable instructions from the court as to the law, and here the court was asked, in effect, to tell the jury, as a matter of law, that such relation existed, which it very properly refused to do. *Mullan* v. *Philadelphia, &c., Steamship Co.*, 78 Penn. St., 25; *Potter* v. *Chicago, &c., R. R. Co.*, 46 Iowa, 399.

The defendant also moved the court to instruct the jury, that if they should believe from the evidence that the engine and train were in good condition, and under the control and

guidance of competent and reliable persons; "that it was, in the judgment and opinion of expert railroad men and engineers with that engine and train on those grades, impracticable to have avoided the collision, etc., then they must find," etc. This the court modified, so as to read: "And that it was in the judgment and opinion of *all* the expert railroad men and engineers *examined as witnesses in the cause, that* with that engine and train on those grades," etc.; the words italicized being added; and thus modified, the instruction was given.

Of this the defendant complains; and it is true that in modifying the instruction, the meaning of the court is not as fully and precisely expressed as it might have been. But it cannot fairly be said, we think, that the jury were misled. On the contrary, the court evidently intended to say to the jury, and the jury must have understood the court to mean, that in considering the question of negligence in the management of the train, they must weigh *all* the expert testimony in the case, as well that for the plaintiff as the defendant, and decide in accordance with the preponderance of the evidence. And so construed, the instruction is unexceptionable. But independent of this instruction the verdict could not properly have been otherwise than for the plaintiff, and the defendant, therefore, in any view, has not been prejudiced. *Danville Bank* v. *Waddill,* 27 Gratt., 448; *Snouffer's adm'r* v. *Hansbrough,* 79 Va., 166 ; *Chicago, &c., R. R. Co.* v. *Ross, supra.*

The defendant also complains of the modification which was made by the court of its twelfth instruction. The court was asked to instruct the jury to "be on their guard against feelings of sympathy, compassion and charity, and against making any extravagant allowance." The modification consists in adding immediately after the word "allowance," the words "growing out of said sympathy, compassion and charity"; so that, by the modified instruction, the jury were cautioned

"against feelings of sympathy, compassion and charity, and against making any extravagant allowance growing out of said sympathy," etc.

The complaint is that the court by adding these words turned aside the instruction from its true intent and object, and left the jury to infer that, while guarding against feelings of sympathy, compassion and charity, they were free to make an extravagant allowance from passion, prejudice, or any other impulse or feeling. We do not think the instruction is justly obnoxious to such a criticism. Surely telling the jury to guard against feelings of sympathy, compassion and charity, could not be construed by any intelligent and right-minded juror as an invitation or license from the court to violate his oath as a juror, and give way to passion, prejudice or any other improper feeling. To tell a jury not to be swayed by passion or prejudice, is only mildly to instruct them not to violate their solemn oaths—an instruction, let us hope, unnecessary in the administration of justice in the courts of this Commonwealth.

This sufficiently disposes of all the questions arising in the case. No exception was taken to the refusal of the circuit court to set aside the verdict and to grant a new trial. And, upon the whole, we are of opinion that there is no error in the record to the defendant's prejudice. The judgment must therefore be affirmed.

JUDGMENT AFFIRMED.