# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## R. & D. R. R. Co. v. Norment.

### December 1st, 1887.

Absent, Lewis, P.

1. RAILROAD COMPANIES—*Employees—Negligence.*—Company must provide all appliances reasonably essential to employee's safety; else, it is liable for injury to him, unless he contributed thereto by his own want of ordinary care.

2. IDEM—*Risk of employment—Knowledge.*—If, through company's failure to provide such appliances, &c., employee receives injury, he may recover damages, though he knew of such default and continued without complaint in the employment.

3. IDEM—*Collision—Fellow servant.*—Plaintiff, whilst "overhauling a car on a branch track, sustained injury from collision of the line of cars under which he was at work, with another car which was shifted on to the same track, by the negligence of the engineer in shifting the same without first ascertaining whether there was any person at work under the cars with which the shifted car might collide:

HELD :
   For such negligence the company is liable, the engineer and the over-hauler being employed in different departments of service.

4. APPELLATE COURT—*Instructions—Reversal.*—This court will not reverse a judgment on account of refusal of trial court to give instructions asked for, if the party has not been aggrieved by the refusal.

5. DAMAGES—*Personal injuries.*—Jury should consider employee's physical and mental suffering, medical expenses, loss of wages, and inability, if such exists, to follow his calling, in estimating the damages, he is entitled to receive for negligent injuries to his person.

Error to judgment of circuit court of city of Richmond, rendered December 23d, 1885, in an action of trespass on the case,

wherein S. F. Norment was plaintiff and the Richmond and Danville Railroad Company was defendant. The object of the suit was to recover damages for an injury done to the plaintiff by and through the alleged negligent acts and omissions of the said company's agents.

When the jury had heard the evidence on both sides, the plaintiff asked for the following instructions:

"1. The court instructs the jury that if they believe from the evidence that the plaintiff was required by the defendant to go under one of the defendant's cars as for the purpose alleged in the declaration, and not knowing, and having no reason to believe, that another car would be shifted upon the track upon which the first-mentioned car stood, and while there as aforesaid a car, by order of the conductor of the shifting engine, was shifted upon said track, without the plaintiff being notified by the ringing of the bell on the said engine, if it was usual so to ring when so shifting a car from one track to another, or by other means, or without knowing, or having an opportunity to learn of said shifting, and that, by reason of said shifting, the plaintiff was, as in the declaration alleged, injured, then the jury must find for the plaintiff."

"2. The court instructs the jury that if they should find for the plaintiff, they may, in estimating the damages, take into consideration his physical and mental suffering arising from said injury, his medical expenses in getting his injuries healed, his loss of wages for the time that he was prevented by said injuries from working, and proper compensation for his being deprived by the said injuries from following such calling or business as he could have followed but for said injuries."

And the defendant moved the court to instruct the jury as follows:

"1. That if the jury believe from said testimony that the plaintiff worked as overhauler in the yard of the defendant at Richmond, in which there were numerous railroad tracks on which freight and other cars were being often moved about by

the shifting engine used for that purpose, to-wit: cars that were moved from one point to another, as occasion required, some to be loaded, some to be unloaded, some to be placed upon a track in the yard, so that the overhaulers might make necessary repairs and the greasers could grease them, and that this shifting and moving the shifting engine and cars for the purposes aforesaid, and also for the purpose of making up trains, so often going on during both day and night with the knowledge of the overhaulers, the said shifting engine being used only for the purposes aforesaid, and for the purpose of carrying to the Manchester yard of said defendant, just on the opposite side of James river from Richmond, cars requiring more than ordinary repairs, or cars sent there for other purposes, and that its principal business was shifting cars and trains in the yard at Richmond, where the overhaulers worked, and all this with the knowledge of the overhaulers themselves; that the conductor, the manager of the shifting engine and the engineer thereof, and the overhaulers aforesaid, were co-employees; and if the jury believe that the plaintiff sustained the injury complained of by reason of the negligence of the conductor or engineer of the shifting engine, he cannot recover, unless the jury believe from the evidence that the conductor or engineer, one or both, were incompetent to discharge the duties properly of the position they respectively occupied, and that the defendant had knowledge of such incompetency."

" 2. That if the jury believe from the evidence that if the plaintiff had acted in such manner as any prudent person would have acted under the same circumstances, and that if he himself had not acted so imprudently, he would not have received the injury he sustained, he is not entitled to recover, although they may believe from the evidence that the conductor or engineer of the shifting engine may also have acted negligently."

But the court refused to give the plaintiff's instruction, No. 1, but did give his instruction, No. 2; and the court refused to

give the two instructions asked for by the defendant, and in lieu thereof and of plaintiff's No. 1, gave the following two instructions :

"The jury are instructed that the defendant is not responsible to the plaintiff for injuries resulting from the negligence of either Robinson or Teller, unless they believe that he was not competent for or careful in the discharge of the duties assigned him, and that the defendant either knew or by the exercise of proper care ought to have known that he was not competent or careful.

"But, if the jury shall believe that the defendant had failed to exercise all reasonable care and caution in its instructions to and control of Robinson and others, employees in the yard, and in furnishing them with and requiring them to use all means and appliances reasonably necessary for the protection of its employees while engaged in such work as the plaintiff was engaged in when injured, they should find for the plaintiff, unless they further believe that the plaintiff contributed to the accident by his own failure to exercise such care and caution as an ordinarily prudent man with his knowledge or opportunities of knowledge of the danger, ought to have exercised for his own protection; in which event, they should find for the defendant."

And thereupon the defendant, after excepting to the action of the court in refusing to give its instructions, No. 1 and No. 2, and in giving the court's instruction, No. 2, moved the court to give the jury the instruction designated as the defendant's instruction, No. 3, as follows:

"If the jury believe from the evidence that the plaintiff, when he went into the employment of the defendant as an employee to work in its Richmond yard as greaser of cars and overhauler of cars, had an opportunity, after being there for one month or more, to familiarize himself with the manner in which the shifting of cars with the shifting engine was carried on and with the means used to avoid accidents, and did not

complain to the defendant, or any of its agents, of the said manner in which the operations were carried on, but with the full knowledge of the manner of conducting said operations continued voluntarily in such employment, he cannot recover in this action for the injury he sustained, although such injury may have resulted from the negligence of the conductor and engineer, or either, of the shifting engine, his co-employees, if the jury believe they were competent and fit persons for the discharge of the duties of the respective positions they held; or, that if they were not, that the defendant knew, or by the proper exercise of care ought to have known that the engineer and conductor were, or one of them was not, competent or careful."

But the court refused also to give this instruction; to which action of the court refusing to give said instruction, as well as to the action of the court aforesaid, in respect to the other instructions, the defendant excepted; and this is the defendant's first bill of exceptions.

Issue having been joined on the defendant's plea of not guilty, and all the evidence being in and the instructions given as aforesaid, the jury found for the plaintiff and assessed his damages at $3,250: whereupon, the defendant by counsel moved the court to set aside the verdict and grant a new trial on the ground that it was contrary to the law and the evidence; which motion the court refused. And, thereupon, the defendant again excepted; and this is the defendant's second and last bill of exceptions, in which the court certifies the evidence. And the court gave judgment according to the finding of the jury; and the defendant obtained a writ of error and *supersedeas* to said judgment.

*H. H. Marshall*, for the plaintiff in error.

*Meredith & Cocke*, for the defendant in error.

RICHARDSON, J., (after stating the case), delivered the opinion of the court.

The defendant, the plaintiff in error here, excepted to the instruction given at the instance of the plaintiff, which was the plaintiff's instruction, No. 2, but assigned no defect therein, and could not have done so, as it was plainly proper and upheld by reason and authority.

As to the instructions asked for by the defendant and refused by the court, the first two are covered by those given by the court, which in substance are the same, only more directly and strongly expressed; so that, whether they were right or wrong, it is not necessary to consider, as it is certain that the defendant was not aggrieved by the court's substitution.   The defendant's first instruction tells the jury that, if they believe certain facts from the evidence, then the conductor and the engineer of the shifting engine, by whose acts the plaintiff was injured, and the plaintiff were co-employees, and that if the jury believe from the evidence that the plaintiff sustained the injury complained of by reason of the negligence of said conductor and engineer, he cannot recover unless the jury believe from the evidence that the said conductor and engineer, or either of them, were incompetent to discharge properly the duties of the positions they respectively occupied, and that the defendant had knowledge of such incompetency.

Yet the first instruction given by the court assumes that the conductor and the engineer were co-employees with the plaintiff, and tells the jury down right that the defendant is not responsible for injuries resulting to the plaintiff, from their negligence, unless, &c.

The third instruction of the defendant is to the effect that an employer is released from all liability for negligence, although aware of its continued existence, if the injured employee continued to work for him after he knew of the negligent and dangerous manner in which the employer allowed his busi-

ness to be conducted. The court did not err in rejecting this instruction. It was palpably improper. It is sanctioned neither by reason, justice, nor law. The usual and legal duty of every employer is to provide all means and appliances reasonably necessary for the safety of those in his employment. It is a cruel, an inhuman doctrine that the employer, though he is aware that his own neglect to furnish the proper safeguards for the lives and limbs of those in his employment, puts them in constant hazard of injury, is not to be held accountable to those employees who, serving him under such circumstances are injured by his negligent acts and omissions, if the injured parties, after themselves becoming cognizant of the peril occasioned by their employer's negligent way of conducting his business, continue in his employment and receive his pay, though they may be virtually compelled to remain by the stern necessity of earning the daily food essential to keep away starvation itself.

The second instruction of the court correctly propounds the law of the case. It is sustained by an unbroken line of authorities, in none of which is it more clearly expressed than *B. & O. R. R. Co.* v. *McKenzie*, 81 Va., 71, where Lewis P. says: "The master, to be exempt from liability, must himself have been free from negligence. He is bound to use ordinary care in supplying and maintaining proper instrumentalities for the performance of the work required, and generally to provide for the safety of the servant in the course of the employment, to the best of his skill and judgment. And if he fail in the performance of his duty in this particular, he is liable to the servant as he would be to a stranger," citing *Hough* v. *Railway Co.*, 100 U. S., 213; *Wabash Railway Co.* v. *McDaniels*, 107 *Id.*, 454; 2d Thompson on Neg., 985–6. We are, therefore, of opinion that said circuit court committed no error in respect of its rulings as to said instructions of which the plaintiff in error can complain.

It is also assigned for error that the circuit court overruled

the defendant's motion to set aside the verdict of the jury and award a new trial, on the ground that the verdict was contrary to the law and the evidence.

The evidence as certified discloses the following facts: S. F. Norment, the defendant in error, was, on the 2d of March, 1885, employed by the defendant company, the plaintiff in error here, at its Richmond depot yard as an "overhauler," that is, to assist in fixing up cars needing repairs. Two men called inspectors go over the cars ahead of the overhaulers and see what is to be done to them. They set down on a piece of paper the number of the car and what is to be done to it, and hang the paper up on file in what is called "the overhauler's shanty," and the men who do the overhauling come into the shanty, examine the paper, learn what is required of them, and at once proceed to do it. On the day he received the injury in question, Norment was required to put a drawbar spring into the end of a certain car which stood on "the branch track." He undertook to perform this duty, aided by one Garrett, another overhauler, the job requiring two. The car thus to be fixed was one of the intermediate ones of a line of cars standing on said track in said yard. One car was in front and several behind the damaged car to be overhauled. To do the job it was necessary for Norment to get under the damaged car and for Garrett to get between it and the one in front of it. Having so placed themselves, they removed the old spring and began to put in the new one. The cross-head fitted tight and required both men to fix it—one to drive it up and the other to head it. Norment held it to place the spindle in the seat, and Garrett proceeded to drive it up. Whilst they were so situated the company caused another car to be shifted on to the branch track and driven against the car which stood in front of the one they were at work on. That caused the car in front of the damaged car to be driven against the latter car, and caused the hand of Norment that held the spindle to be caught between the drawbar and the spring seat and to be

greatly mashed.   The injury caused the loss of the first finger and the first joint of the second.   The injury also caused the hand to rise, and it had to be lanced.   The result was that the whole hand was rendered permanently stiff and disabled.   The company owned an engine called the "shifting engine," used to shift cars from one track to another and to and from the Manchester yard.   In the performance of these duties the shifting engine was generally employed all day.   It was run by an engineer who did the shifting according to orders given him by the shifting conductor.   Nothing was done except by the orders of this conductor.   The car which was shifted upon the branch track where Norment was at work, was ordered to be so shifted by the conductor.   There was no repair track in this yard.   A repair track is one upon which cars needing repairs are put, and upon which it is not customary for the shifting engine to come without notice to the overhaulers at work there.   With such a track overhaulers can do their work without being subjected to unnecessary danger.   The company knew of the necessity for such a track, because they have such a track in their Manchester yard.   The company had adopted and provided up to the time of this injury no means whatever whereby overhaulers could be protected when at work upon a car.   Even when complaint was made of the want of protection they were told to look out for themselves.   In this Richmond yard the company not only failed to have a repair track as a means of safety to overhaulers, but failed to provide another simple and cheap safeguard, that is, signal flags.   A flag in the end of the bumper of the first car to notify the conductor of the shifting engine that some one is working under the car is the usual means of protection given to overhaulers.   The company recognized the necessity for them before the injury, for they used them before the injury in the Manchester yard.   After Norment was injured, the company showed its knowledge of the necessity for signal flags and had them put into use in the Richmond yard.

The company undertook to prove to the jury, that before an overhauler should go under a car to work, it was his duty to notify the conductor or engineer of the shifting engine.

At the time of the injury, Norment was not of the same grade or same line of duty as Tiller, the engineer, or as Robinson, the conductor of the shifting engine; nor was he under the orders of either of them. He was under the orders of Newcome, the foreman of overhaulers and greasers. Teller and Robinson were in the transportation department of the company and subject to the orders of West, the master of transportation. So, Norment was not a co-employee with Teller and Robinson in the sense which relieves the employer from liability for an injury done to one employee by the negligence of his co-employees. But the court below instructed the jury expressly that Tiller and Robinson were co-employees with Norment, and that the company was not liable to Norment for an injury resulting to him from their negligence. Such instruction was palpably erroneous. It was in direct opposition to the doctrine laid down by this court in *Moon's adm'r* v. *R. & A. Railroad Co.*, 78th Va., 745, where it was held that a section master in charge of a squad of hands altering and repairing the road, could in no sense be regarded as the fellow-servant in the same common employment or department of service with the person injured, who was a train hand and brakeman—hence they were not co-employees thrown together in the performance of a common duty, and having opportunity to observe and judge of the habits and qualifications of each other. The doctrine laid down in that case was reaffirmed by this court in the case of *B. & O. R. R. Co.* v. *McKenzie, supra*, and is in full accord with *Railroad Co.* v. *Ross,* 112 U. S., 377.

It cannot be questioned that the injury to Norment was caused by the negligent act of Robinson, the conductor, in shifting the car on the branch track where Norment was at work in the regular course of his duty, and in cutting that car

loose upon that track, and in causing it to strike against the car which stood on that· track in front of the car under which Norment was engaged in fixing the draw-bar spring, as he was directed to do by his superior; and that in so doing without first taking pains to ascertain whether there was any person under that car, was negligence for which the company is responsible.

In *Norfolk and Petersburg R. R. Co.* v. *Ormsby*, 27 Gratt., 455, it was held to be negligence for which that company was liable, that the obvious precaution was neglected, of making an examination before the stationary flat at Howell's was set in motion, to see if there was any one or any thing under or near the car which could be injured by its being put in motion.

For these reasons, we are of opinion that the circuit court did not err in overruling the motion of the defendant, (plaintiff in error here), to set aside the verdict and grant a new trial, and that the judgment complained of must be affirmed with costs to the defendant in error.

Fauntleroy, J., dissenting, said:

I do not concur in the opinion of the majority of the court in this case; and feel constrained to file a *dissenting* opinion.

After all the evidence in the case, both by the plaintiff and by the defendant, had been submitted to the jury, certain instructions were asked for by the plaintiff, and by the defendant, which the court refused to give to the jury, as prayed for; and, in lieu thereof, gave a detached fragment of plaintiff's instruction No. 1, which, as a whole, had been refused; and then gave the two following instructions of its own, viz: "The jury are instructed that the defendant is not responsible to the plaintiff for injuries resulting from the negligence of either Robinson or Teller, unless they believe that he was not competent for or careful in the discharge of the duties assigned him, and that the defendant either knew, or by the exercise of

proper care, ought to have known that he was not competent or careful. 2. But if the jury shall believe that the defendant had failed to exercise all reasonable care and caution in its instructions to and control of Robinson and others, employees, in the yard, and in furnishing them with and requiring them to use all means and appliances reasonably necessary for the protection of its employees while engaged in such work as the plaintiff was engaged in when injured, they should find for the plaintiff, unless they further believe that the plaintiff contributed to the accident by his own failure to exercise such care and caution as an ordinarily prudent man with his knowledge or opportunities of knowledge of the danger, ought to have exercised for his own protection, in which event they should find for the defendant."

To the action of the court in refusing to set aside the verdict and grant a new trial, upon the motion of the defendant; and in refusing to give the instructions asked for by the defendant; and in giving the instruction No. 2, asked for by the plaintiff, and the instructions aforesaid, given by the court of its own, the defendant excepted; and asked the court to certify all the evidence in the case; which was accordingly done.

It is not necessary to review the evidence in the case, nor to apply the rule which would restrict the consideration to the plaintiff's evidence; because without reference to the merits of the case as presented by the record, the instructions which were given by the court are, in my opinion, erroneous; and the judgment of the court should be reversed therefor.

The instruction No. 2 asked for by the plaintiff, and given by the court is as follows: "The court instructs the jury that, if they should find for the plaintiff, they may, in estimating his damages, take into consideration his physical and mental suffering arising from said injury, his medical expenses in getting his injuries healed, his loss of wages for the time that he was prevented by said injuries from working, and proper compensation for his being deprived by the said injuries from fol-

lowing such calling or business as he could have followed but for said injuries." This instruction, while it states the law correctly, is but a detached fragment of the instruction No. 1 of the plaintiff, which the court refused to give; and is without proper prelude or introduction, and makes no reference or relation to the evidence given in the case.

The court's instruction No. 1 is ambiguous and self-contradictory; and calculated to mislead the jury. It instructs the jury, in the same breath, "that the defendant is not responsible to the plaintiff for injuries resulting from the *negligence* of either Robinson or Teller, unless they believe that he was not competent for or *careful* in the discharge of the duties assigned him," &c.

The words or proposition "*not careful* in discharge of the duties assigned him," is *negligence*; and therefore, the proposition to the jury is, "that the defendant (company) is not responsible to the plaintiff for injuries resulting from the *negligence* of either Robinson or Teller, unless they believe that he was (*negligent*) not careful." Indeed, any instruction calculated to mislead the jury, whether it arises from *ambiguity* or any other cause, ought to be avoided; and, if given, it will oblige the appellate court to reverse the judgment." 4 Minor's Inst., part 1, (1878) p. 876.

But the instructions given by the court do not anywhere, from beginning to end, instruct the jury that they are to *found their belief upon the evidence.* "To use only the words '*if the jury believe*,' without conveying to their minds that they are to found their belief *on the evidence*, is an objectionable way of giving an instruction." Thompson's Charg. Jury, p. 88, § 62.

A jury must base their verdict upon the facts as shown by the evidence introduced before them; and it would be clearly erroneous for the court to instruct them in such a manner that they would be at liberty to believe certain facts, important to a proper decision of the issue, from any source other than the evidence." *Railroad Co.* v. *Ingraham*, 77 Ill., 470. And

the opinion of this court in the case of *Gordon* v. *City of Richmond,* 83 Va., 436.

For the foregoing reasons and authorities, I am of opinion, that the judgment of the circuit court of the city of Richmond complained of is erroneous and should be reversed and annulled.

Judgment affirmed.