### WOLCOTT v. STUDEBAKER et al.

*(Circuit Court, N. D. Illinois.   December 15, 1887.)*

1. MASTER AND SERVANT—NEGLIGENCE OF FELLOW-SERVANTS.
  An elevator boy, an engineer, and plaintiff were in the employ of defendant. The engineer's duty was to furnish the motive power for an elevator, which carried plaintiff to an upper story to his work, and the boy's duty was to run the same. The engineer always took the elevator on a trial trip every morning with nobody on board. On one occasion plaintiff entered the elevator in the morning shortly before the hour when he was required to go to work, just as the engineer was taking it on the trial trip. The elevator boy was not there, and the plaintiff was injured. *Held*, that if the injury was caused by negligence other than that of plaintiff, it was the negligence of the elevator boy or the engineer, who were fellow-servants of plaintiff, for which defendant would not be liable; the ordinance of the city requiring persons owning elevators to keep a competent person to run them being merely declaratory of the common-law duty and liability in regard to such employes.[1]

2. PRACTICE IN CIVIL CASES—DISMISSAL AND NONSUIT—ILLINOIS CIRCUIT.
  In the federal courts of Illinois, where, at the conclusion of plaintiff's testimony, the court would, if a verdict were rendered for him, set the same aside, and motion is made by defendant to direct a verdict for him, plaintiff is not allowed to take a nonsuit, but may withdraw a juror and discontinue.

At Law.

Suit for damages for injury to plaintiff while in the defendants' employment, resulting from an elevator accident. The plaintiff's testimony tended to show that he was employed by the defendants, who were manufacturers and dealers in wagons, carriages, etc., in the city of Chicago, to crate or box carriages. His place of work was on the fourth floor of defendants' building. It was his habit, and that of the other employes, to begin work at 7 o'clock in the morning, and to be carried to the fourth floor by the elevator in question. The elevator was used to carry both freight and passengers, and ordinarily began running at about five minutes before 7 o'clock. It was made to descend to the basement of the building, but the employes got on the elevator platform at the first floor. The elevator was under the control of defendants' engineer, who had charge of the engine in the basement, which supplied the motive power to run the elevator. Defendants also employed an elevator boy, who took charge of the elevator when the engineer informed him it was in working order, and ready to carry the men to their work on the upper floors. Plaintiff's testimony also tended to show that it was the practice of the engineer to make a trial trip before 7 o'clock, with no one on the elevator, for the purpose of getting the air out of the cylinders, and the

---

[1] See note at end of case.

elevator in smooth running order. On such trial trip the elevator was controlled by the engineer by means of the ropes in the basement. On the morning of the accident, and just before 7 o'clock, it appeared that the plaintiff and five other of defendants' employes got on the elevator platform in the absence of the elevator boy; that the elevator was started for a trip up by the engineer in the basement, with no one on the elevator platform in charge; and there was no evidence that the engineer knew that anybody was on the elevator. The elevator ran up past the third floor, where one man jumped off. At the entrance to the elevator shaft on the third floor, the only protection was a chain stretched across the opening, about three feet from the floor. Plaintiff testified that before the elevator reached the fourth floor where he intended to get off to go to his work, it stopped suddenly and began to descend very rapidly; that somebody on the elevator shouted that it was falling, and plaintiff, believing that it was falling, attempted to jump off at the third floor, and, his foot striking the chain stretched across the opening, he was thrown out upon the floor on his head and shoulder, and seriously injured. The elevator in fact did not fall, but was stopped by one of the men on the platform before it reached the second floor. It was made to appear further that at the time of the accident there was an ordinance in force in the city of Chicago which provided as follows: "It shall be the duty of every person owning, controlling, operating, or using as owner, lessee, or agent, any passenger or freight elevator in any building within the corporate limits, to employ some competent person to take charge of and operate the same; and any such person who shall neglect to comply with the provisions of this section shall be fined the sum of $10 for each and every day of such neglect." Upon the case made on the part of the plaintiff, and at the conclusion of his testimony, the defendants moved the court to instruct the jury to return a verdict in their favor.

*E. L. Harpham* and *S. P. Douthart,* for plaintiff.

*Flower, Remy & Holstein,* for defendants.

DYER, J., (*orally.*) Without discussing the question of contributory negligence, which I am inclined to think would be one for the jury, if the case were to be submitted to them, I proceed to consider the other grounds of alleged liability in the case. It is said by counsel for the plaintiff that the ordinance of the city which made it the duty of the defendants to employ some competent person to take charge of and operate the elevator in question, fixes upon the defendants, under the facts disclosed, a liability to the plaintiff for the injury which he sustained. The ordinance, it seems to me, simply declares a common-law duty; that is, that every person owning, controlling, or operating a passenger or freight elevator shall employ some competent person to take charge of and operate it. As I understand it, that is precisely the duty which the law, in the absence of such an ordinance as this, imposes. The law says to every person who owns, controls, and operates one of these elevators, that he must employ some person to run it, and that he must exercise all reasonable care in the selection of a competent person for that purpose. This

ordinance merely imposes a penalty for the disregard of that duty. The testimony shows that the defendants had in their employment a person spoken of by the witnesses as "the elevator boy," whose duty it was to run this elevator. It is not shown that he was not a competent person. If he was absent from his post when he ought to have been there, then he was guilty of negligence. The ordinance was not intended to punish a man for non-compliance with its requirements because in a case where he has in his employment a competent person whose duty it is to take charge of and run an elevator, an injury has resulted from the negligence of such employe. The defendants complied with the ordinance; and the most that can be said is, that if it was the duty of the elevator boy to be at his post on the occasion referred to, to take this elevator up with these people upon it, then his absence from his post of duty made him guilty of negligence. Such being the true state of the case, I do not see how the further conclusion is to be escaped from, that the elevator boy was a co-employe of the plaintiff, and of the other employes of the defendants who were on the elevator at the time. The engineer controlling the motive power in the basement of the building was also a co-employe. Suppose, then, there was negligence on the part of the engineer in starting the elevator for a trial trip when he did, without knowing, as it may be said he ought to have known, that there were people upon it, and that this negligence brought about the accident which befell the plaintiff, are the defendants liable to the plaintiff for the consequences of that negligence? As we all know, much has been said and written upon this subject of the liability of an employer to one servant for the negligence of a fellow-servant; and oftentimes it is difficult to draw the line with accuracy, and apply the law correctly to the given case. But much of the doubt which has prevailed upon the subject has been cleared away by decisions which must be regarded as controlling here. Decisions of the federal courts upon this question, are, it is said, in conflict with decisions of the supreme court of Illinois; but if the question, substantially as it arises in the case at bar, has been determined by the supreme court of the United States, of course the adjudications of that court must prevail in this court.

*Hough* v. *Railway Co.*, 100 U. S. 213, was a case where an engineer on a locomotive sustained an injury caused by the defective condition of the pilot or cow-catcher. There was a certain person in the employment of the company whose duty it was to see that the engine was kept in suitable and proper condition for use. He was the master mechanic, to whom was committed the exclusive management of the motive power of the defendant's line, with full control over all engineers, and with unrestricted power to employ, direct, control, and discharge them at pleasure. There had been neglect of duty in keeping the engine in safe condition for use. The pilot had been left in a defective and dangerous condition, and the engineer had called the attention of the master mechanic to the fact, and had repeatedly requested him to have the defect repaired, and the engine put in safe condition for use. The engineer continued to run the engine, relying upon the requests that he had made

to the master mechanic, and the assurances he had that the pilot should be put in proper condition. Upon that state of facts, the court held that the company was liable to the engineer for the injury he sustained, and that it was not relieved from liability by showing that the engineer continued to use the engine after he knew of the defect, because he had given the company, through the person who had charge of the motive-power department, notice of the defect, and had demanded that it be repaired. This was just and right. The engineer and the master mechanic were engaged in distinct and different departments of service. The master mechanic was the superior in his department, exercising control over men whose business it was, under his direction, to keep the engines of the company in proper repair, so that they might be used with safety by persons engaged in another branch of the company's service.

Now let us consider the bearing upon the case we have in hand of the case of *Randall* v. *Railroad Co.*, 109 U. S. 478, 3 Sup. Ct. Rep. 322. That was a case where the court held that a brakeman working a switch for his train on one track in a railroad yard was a fellow-servant with the engine-man of another train of the same corporation upon an adjacent track, and that he could not maintain an action against the corporation for an injury caused by the negligence of the engine-man in driving his engine too fast, and not giving due notice of its approach, without proving negligence of the corporation in employing an unfit engineman. Here was a brakeman working a switch for the train on which he was employed, on one track in a railroad yard. His employment had no connection with the operation of the engine which was upon an adjacent track. His work was entirely disassociated from the running of the engine, and, by the carelessness of the engineer who controlled the movements of the engine, the brakeman was struck and injured. The supreme court held that those two men, engaged in their respective employments, were fellow-servants, according to the great preponderance of judicial authority, and therefore that the railroad company was not liable for the injury which the brakeman on one train sustained through the negligence of an engineer on another train. Said Mr. Justice GRAY, speaking for the court:

"They are employed and paid by the same master. The duties of the two bring them to work at the same place, at the same time, so that the negligence of the one in doing his work may injure the other in doing his work. Their separate services have an immediate common object,—the moving of the trains. Neither works under the orders or control of the other. Each, by entering into his contract of service, takes the risk of the negligence of the other in performing his service; and neither can maintain an action for an injury caused by such negligence, against the corporation, their common master."

This is not in conflict with the ruling in *Railway Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184. In that case, it was decided that where an engineer on a locomotive was injured through the carelessness of a conductor on the same train, the company was liable. The grounds of that decision were that the conductor had the right to command the

movements of the train, and to control the persons employed upon it, that his relation was that of a superior officer in charge of the train, and that he stood for and as the representative of the corporation; that the engineer was subject to his control. And the court likened it to the case of a representative of a corporation who has control of a certain department in the service, other persons employed in the same department being subject to his directions. The superior employed in such a position represents the corporation, and it is therefore bound by his acts, and responsible for his negligence, because the corporation must act through persons who are placed in positions of superior authority in the different departments of the service. On the grounds stated, the *Randall Case* and the *Ross Case* appear to be distinguishable. *Randall* v. *Railroad Co.* was followed in the case of *Howard* v. *Railway Co.*, 26 Fed. Rep. 837. In that case it was held that a fireman on a passenger train, and an engineer in charge of an engine not connected with such train, but belonging to the same railroad company, are fellow-servants, and where the fireman was killed by a collision between the engine and train occasioned by the negligence of the engineer, the company was not liable. Judge BREWER discusses the question at length in his opinion in that case.

Following out the logic of the *Randall Case* and this case to which I have just referred, it is my conviction that the plaintiff in the case at bar has made a case in which, if there was negligence at all, it was negligence on the part of the engineer who controlled the motive power of this elevator, and of the elevator boy, one or both, and that they were the fellow-servants of the other employes, including the plaintiff, who were in the habit of riding in the elevator to and from their work. All were in the service of the defendants. The elevator was used in carrying on the business in which all were engaged. It is like the case of the engineer who is running an engine connected with a train, and the other employes who are in service on the same train. Here was an apparatus which was put into the defendants' building for the purpose of enabling the employes to prosecute the work which they were employed to do. They were engaged in different rooms, and different stories of the building. They went to and from their work by means of this elevator. Here was a man in the basement who controlled the use of the steam-power by which the elevator was moved up and down. The elevator was one of the instruments by which the work of all was being carried on. The engineer had not charge of a department. He was simply an instrumentality controlling the use of the motive power, and was certainly a fellow-servant with the plaintiff, as was the elevator boy, if the persons employed by the railroad company in the *Randall Case* were fellow-servants. They were all doing work—to use the language of some of the cases—which conduced to a common result; neither worked under the orders or control of the other, and so they were fellow-servants.

Counsel are familiar with the rule in relation to the duty of the court in submitting a case to the jury. That rule is, as laid down by the

supreme court, that if the trial court can plainly see that upon the case made by the plaintiff, if a verdict in his favor should be rendered by the jury, it would be incumbent upon the court to set that verdict aside, then it is the duty of the court to direct a verdict for the defendant. Upon the showing here made, and applying to the case the law as I have endeavored to state it, it follows that, if the jury should give the plaintiff a verdict upon the evidence as it stands, it would be the duty of the court to set the verdict aside. The court must therefore direct a verdict for the defendants, at this stage of the case.

*Mr. Harpham.* I would like to take a nonsuit.

*Mr. Holstein.* I object, and ask for a verdict in favor of the defendants.

*The Court.* It is not our practice to grant what is technically known as a nonsuit. The proper practice would be for the plaintiff to ask to withdraw a juror and discontinue the case.

*Mr. Holstein.* I don't think he has that right after submitting his case.

*The Court.* There is a statutory provision of this state to the effect that every person desiring to suffer a nonsuit shall be debarred from doing so, unless he do so before the jury retires from the bar. As I am advised, it was the practice of Judge DRUMMOND, applying by way of analogy this statute to such a case, and is the practice of Judge BLODGETT, to allow the plaintiff before the jury retires to withdraw a juror, and discontinue. So I shall permit the plaintiff to take that course.

### NOTE.

FELLOW-SERVANTS—WHO ARE. Within the meaning of the rule exempting the master from liability for injuries resulting to a servant from the negligence of a co-employe, fellow-servants are defined to be persons engaged in the same common service, under the same general control. Gravelle v. Railway Co., 10 Fed. Rep. 711. They must be directly co-operating with each other in a particular business, in the same line of employment, or their usual duties must bring them habitually together, so that they may exercise a mutual influence upon each other promotive of proper caution. Railway Co. v. Snyder, (Ill.) 7 N. E. Rep. 604. A track-repairer and an engineer are held to be fellow-servants. Van Wickle v. Railway Co., 32 Fed. Rep. 278. So, also, a brakeman employed by a railroad company on one of its trains, and an engineer working for the same company on a different train. Randall v. Railroad Co., 3 Sup. Ct. Rep. 322. And a station agent, required to look after the safety of switches, and to see that the main track is kept free and unobstructed for the passage of trains, is a fellow-servant of a brakeman or engineer. Toner v. Railway Co., (Wis.) 31 N. W. Rep. 104; Brown v. Railway Co., (Minn.) 18 N. W. Rep. 834; Dealey v. Railroad Co., (Pa.) 4 Atl. Rep. 170. An inspector of cars is held to be a fellow-servant of a brakeman. Smith v. Potter, (Mich.) 9 N. W. Rep. 273. The foreman of a gang of section or track men engaged in the discharge of his ordinary duties in the course of his employment is a fellow-servant with them. Olson v. Railway Co., (Minn.) 35 N. W. Rep. 866. Section or track men are held to be fellow-servants with the engineer or brakemen of a train. Connolly v. Railway Co., (Minn.) 35 N. W. Rep. 582. It is immaterial that a negligent servant is in a position of greater responsibility than the injured one, or in a different line of employment, so long as both are in the same general business. Mining Co. v. Kitts, (Mich.) 3 N. W. Rep. 240. The rule obtains regardless of the fact that one employe may be the superior in rank of others in the same general undertaking, unless he occupies the place of vice-principal. Railway Co. v. Adams, (Ind.) 5 N. E. Rep. 187; Copper v. Railroad Co., (Ind.) 2 N. E. Rep. 749; Fraker v. Railway Co., (Minn.) 19 N. W. Rep. 349; Peschel v. Railway Co., (Wis.) 21 N. W. Rep. 269. A mining boss is a fellow-servant of other employes. Reese v. Biddle, (Pa.) 3 Atl. Rep. 813. But a foreman having entire supervision of a mine, and all its workings, employing and discharging laborers, and prescribing their duties, is not a co-employe within the rule which exempts the master from responsibility for the injuries received by a servant through the negligence of a fellow-servant. Reddon v. Railroad Co., (Utah,) 15 Pac. Rep. 262. And a conductor is held to be a fellow-servant of a brakeman. Pease v. Railway Co., (Wis.) 20 N. W. Rep. 908. On the other hand, in limitation of the general rule, it is held that the master is liable for injuries occurring to an employe while doing an act beyond the

scope of his employment at the direction of a co-employe having authority over him. Gilmore v. Railway Co., 18 Fed. Rep. 866. So, also, where a servant is injured through the negligence of an employe in providing suitable material or appliances, the latter being authorized or required by his employment to discharge this duty. Id.; Kruger v. Railway Co., (Ind.) 11 N. E. Rep. 957; Benzing v. Steinway, (N. Y.) 5 N. E. Rep. 449. And the broad principle is laid down that where a servant is invested with control or superior authority over another employe, and injury is incurred by the latter, through the negligent exercise of the authority so conferred, the master is liable. Thompson v. Railway Co., 14 Fed. Rep. 564; Gravelle v. Railway Co., 10 Fed. Rep. 711; Ross v. Railway Co., 8 Fed. Rep. 544, 5 Sup. Ct. Rep. 184; Railway Co. v. Peregoy, (Kan.) 14 Pac. Rep. 7; Mason v. Machine-Works, 28 Fed. Rep. 228. A station agent is held not to be a fellow-servant of a carpenter employed by the railroad company in a department wholly disconnected from that in which the agent is working. Palmer v. Railway Co., (Idaho,) 13 Pac. Rep. 425. And a common hand engaged in the business of relaying a track under the control of a foreman is not in the same employment within the sense of the rule as one who is managing a switch-engine which is used in moving cars and not engaged in the work of relaying said track. Garrahy v. Railroad Co., 25 Fed. Rep. 258. At common law, where the master delegates to any officer, servant, or agent, high or low, the performance of any duty which really belongs to the master himself, the latter is not relieved from liability for the negligent acts of such servant. Railroad Co. v. Fox, (Kan.) 3 Pac. Rep. 320; Railroad Co. v. Moore, (Kan.) 1 Pac. Rep. 644. So it is held, directly contrary to the decision in the case of Smith v. Potter, *supra*, that an inspector of cars is not a fellow-servant of a brakeman. Braun v. Railroad Co., (Iowa,) 6 N. W. Rep. 5. And when a railroad company confers authority upon one of its employes to take charge and control of a gang of men, in carrying on some particular branch of its business, such servant, in governing and directing the movements of the men under his charge with respect to that branch of its business, is a representative of the company, and not a fellow-servant of the men under his control. Railway Co. v. Hawk, (Ill.) 12 N. E. Rep. 253; Railway Co. v. Lundstrum, (Neb.) 20 N. W. Rep. 198. See, also, upon the point as to who are fellow-servants, Van Wickle v. Railway Co., 32 Fed. Rep. 278; Theleman v. Moeller, (Iowa,) 34 N. W. Rep. 765; Railroad Co. v. De Armond, (Tenn.) 5 S. W. Rep. 600; Railroad Co. v. Norment, (Va.) 4 S. E. Rep. 211; Torians v. Railroad Co., Id. 339; Ewald v. Railway Co., (Wis.) 36 N. W. Rep. 12; Easton v. Railway Co., 32 Fed. Rep. 893; Naylor v. Railroad Co., 33 Fed. Rep. 801.