### PANAMA R. CO. v. JOHNSON.

(Circuit Court of Appeals, Second Circuit. February 15, 1923. On Rehearing, May 14, 1923.)

No. 36.

1. **Constitutional law** ⊂⊃56—**Congress not precluded from altering system of maritime and admiralty law.**

The fact that Const. art. 3, § 2, declaring that the judicial power shall extend to all cases of admiralty and maritime jurisdiction, extended the judicial power of the federal courts to admiralty and maritime law as it existed at the time the Constitution was adopted, does not preclude Congress from subsequently making alterations in the system of law thus referred to.

2. **Constitutional law** ⊂⊃56—**Statute authorizing seamen to sue at law not unconstitutional, as invading admiralty and maritime jurisdiction of courts.**

Act June 5, 1920, § 33, amending Act March 4, 1915, § 20, providing that a seaman suffering injury in the course of his employment may at his election maintain an action for damages at law, with the right of trial by jury, is not in contravention of Const. art. 3, § 2, as invading the constitutional admiralty and maritime jurisdiction of the federal courts.

3. **Seamen** ⊂⊃4—**Congress has power to alter or increase owner's liability for injuries to seaman.**

Jones Act, § 33, amending Act March 4, 1915, § 20, giving to a seaman suffering personal injuries in the scope of his employment the same right of action at law for damages as railway employees under the federal Employers' Liability Act (Comp. St. § 8657–8665), was within the power of Congress.

4. **Statutes** ⊂⊃51—**Congress may incorporate other statutes in act by reference.**

Congress may incorporate in an act other statutes by reference thereto, such not being forbidden by the Constitution.

5. **Action** ⊂⊃6—**Courts** ⊂⊃24—**Without power to decide moot questions or abstract propositions of law, and consent cannot confer jurisdiction.**

It is the duty of every judicial tribunal to determine rights of persons or property which are actually involved in the particular case before it, and not to decide moot questions or abstract propositions, or to declare for the government of future cases principles or rules of law which cannot affect the issue, and no stipulation of parties or counsel can enlarge the power or affect the duty of the court in this regard.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Constitutional law ⬤⟹42—Person not affected by alleged unconstitutional feature of statute cannot raise question of constitutionality.**

A person, in order to question the unconstitutionality of a statute, must show that the alleged unconstitutional features of the law injure him, and so operate to deprive him of rights secured to him by the Constitution.

**7. Constitutional law ⬤⟹42—Person not affected by alleged unconstitutional feature of statute cannot raise question of constitutionality.**

The contention that Jones Act, § 33, amending Act March 4, 1915, § 20, giving to injured seamen a right of action at law, and providing that all the statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable, is unconstitutional, because incorporating the provisions in regard to the death of any seaman, cannot be raised by the defendant in an action for damages for personal injuries; the provision as to death being inapplicable to such action.

**8. Seamen ⬤⟹29(3)—Fellow servant rule applicable to admiralty law.**

Under the old admiralty rule a seaman could not recover in an action for indemnity for injuries received in consequence of the unseaworthiness of the ship or a failure to supply and keep in order the proper appliances appurtenant to the ship, if his injuries resulted from the negligence of a fellow servant; but, if his action was for maintenance and cure, the maritime law imposed on the shipowner liability to a member of the crew injured at sea by reason of another member's negligence, without regard to their relationship.

**9. Seamen ⬤⟹29(4)—Seamen's Indemnity Act did not abolish assumption of risk as defense.**

The federal Employers' Liability Act (Comp. St. §§ 8657–8665), made applicable to actions by a seaman for injuries by Act June 5, 1920, § 33, amending Act March 4, 1915, § 20, did not abolish the defense of assumption of risk, but leaves the law as it was before, except in cases in which the violation of a statute enacted for the safety of employees contributed to the injury or death.

**10. Admiralty ⬤⟹31—Contributory negligence not necessarily defense in admiralty, where damages are in court's discretion.**

The common-law rule that one whose own negligence proximately contributes to his injury cannot recover compensation therefrom, although the defendant's primary negligence caused the injury, was not allowed by admiralty to defeat recovery, as in admiralty the award of damages always rests in the sound discretion of the court, and in cases of contributory negligence the admiralty court will grant damages if it appears to it that to do so is in accordance with principles of equity and justice.

**11. Seamen ⬤⟹4—Act making federal Employers' Liability Act applicable to injuries of seaman constitutional.**

Act June 5, 1920, § 33, amending Act March 4, 1915, § 20, making the Employers' Liability Act (Comp. St. §§ 8657–8665) applicable to an action for damages by a seaman for personal injuries within the maritime jurisdiction of the United States, does no exceed the powers of Congress, and violates no constitutional rights of shipowners.

**12. Seamen ⬤⟹29(4)—Obedience to order requiring use of defective appliance not assumption of risk, defeating recovery.**

In order for assumption of risk to constitute a defense to an action by a seaman for damages for personal injuries incurred in the scope of his employment, under Act June 5, 1920, § 33, amending Act March 4, 1915, § 20, the act of the servant in assuming the risk must have been voluntary and not under constraint, and where a seaman was injured while obeying an order given him by an officer of the ship, who directed him to climb a certain ladder, his act in obeying the order as his duty required was not an assumption of the risk, though he well knew the defective condition of the ladder.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**13. Seamen ☜30—Master has broad authority to punish breaches of discipline.**

The master of a vessel has authority to enforce discipline on his ship and to compel the obedience of seamen, and may inflict corporal punishment on them, and in exceptional cases as a means of punishment he may imprison or confine a seaman.

**14. Seamen ☜29(4)—Shipowner liable for injuries caused by defective appliances, and assumption of risk no defense.**

The rule of the maritime law, imposing on the shipowner the risk incident to the use of defective and dangerous appliances, was not changed by Act June 5, 1920, § 33, amending Act March 4, 1915, § 20, nor by the federal Employers' Liability Act (Comp. St. §§ 8657–8665), made applicable to suits by seamen for personal injuries, and where a shipowner supplied a defective and dangerous ladder, the seaman was entitled to recover, and his right of action for injuries incurred in obedience to orders by using such ladder could not be defeated on the ground of assumption of risk.

**15. Appeal and error ☜1064(1)—Instructions held not prejudicial.**

In an action by a seaman for indemnity for injuries incurred by reason of defective appliances, any error in the instructions as to other defective appliances *held* not prejudicial.

## On Rehearing.

**16. Appearance ☜19(1)—General appearance waiver of objections to jurisdiction of person.**

A general appearance confers jurisdiction in personam of the parties so appearing, and under the rule that the jurisdiction of courts over the persons of parties is one of personal privilege, if a party appears and fails to object to jurisdiction over his person in limine, the objection is waived.

**17. Appeal and error ☜185(1)—Courts ☜24, 37(1)—Jurisdiction of subject-matter not acquired by consent, nor waived by failure to object, and may be raised on appeal.**

Where a court has no jurisdiction over the subject-matter, jurisdiction cannot be conferred by consent of the parties, nor waived by failure to object at any stage of the proceedings, but such objection may be raised even on appeal.

**18. Courts ☜281—Federal courts have jurisdiction of suits under Jones Act.**

Under Judicial Code, § 24 (Comp. St. § 991), conferring on federal District Courts jurisdiction of suits of a civil nature at common law or in equity, when the matter exceeds the jurisdictional amount, the jurisdiction of such courts over suits of a civil nature is not restricted to suits which could have been maintained at common law when the United States came into existence, or prior to the enactment of the statute, and hence such courts have jurisdiction of an action at law by a seaman for personal injury in the course of his employment, under Jones Act, §.33, amending Act March 4, 1915, § 20.

**19. Courts ☜276—Requirement that action be brought in particular federal district may be waived.**

When the subject-matter of the action is within the jurisdiction of a federal District Court, the requirement that the action must be brought within a particular district may be waived.

**20. Courts ☜276—Objection to jurisdiction of suit under Jones Act, as not brought in proper district, waived by failure to object.**

The provision of Jones Act, § 33, amending Act March 4, 1915, § 20, that jurisdiction in a seaman's action for injuries in the course of his employment shall be in the court of the district in which the defendant employer resides, or in which his principal office is located, relates, not to the jurisdiction over the subject-matter of the action, but to the jurisdiction over the person, and establishes merely a personal privilege, which

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the defendant may waive, and which he does waive, when he enters an appearance without claiming such privilege.

In Error to the District Court of the United States for the Eastern District of New York.

Action at law by Andrew Johnson against the Panama Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 277 Fed. 859.

The plaintiff, a resident of the borough of Brooklyn, city and state of New York, brought this action against the defendant, a New York corporation, which owned and operated the steamship Allianca, upon which he was employed as quartermaster. The action was brought to recover damages for injuries which the plaintiff suffered while in the performance of his duties on the ship, while climbing up a ladder from the deck to the bridge, and from which ladder he fell. He claims that his injuries were due to the defendant's negligence in furnishing a defective ladder and by reason of the unseaworthiness of the ship.

The complaint alleges as a second cause of action that defendant failed to furnish him with proper medical and surgical attendance, although the same was requested and he was in urgent need thereof. It is further complained that defendant failed to place the plaintiff in a hospital in any of the ports at which the steamship touched, thereby greatly aggravating his injuries.

The complaint states that there is now in full force and effect section 20 of the Seamen's Act, as amended by section 33 of the Merchant Marine Act of June 5, 1920 (41 Stat. 1007).

Damages in the sum of $75,000 are demanded. The jury returned a verdict for the plaintiff, and assessed the damages at $10,000.

Richard Reid Rogers, of New York City, for plaintiff in error.

Silas B. Axtell, of New York City (Wade H. Ellis, of Washington, D. C., of counsel), for defendant in error.

Burlingham, Veeder, Mastin & Fearey, of New York City (Morton L. Fearey, of New York City, of counsel), amici curiæ.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This action is brought on the common-law side of the court to recover for injuries received by a seaman upon a vessel at sea. The tort alleged occurred on navigable water—the Guanuquil river, in Ecquador, South America; and all causes arising out of transactions occurring on navigable waters are, by the general admiralty law, within the jurisdiction of the admiralty courts, whether the waters are part of the high seas, or are domestic or foreign.

The plaintiff has seen fit, however, not to sue in an admiralty court. In bringing it in a common-law court, he has proceeded under the Act of June 5, 1920, known as the Jones Act (41 Stat. pt. 1, c. 250, p. 988. Section 33 of that act amended section 20 of the Act of March 4, 1915, to read as follows:

"Sec. 20. That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case

of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

The constitutionality of that act is challenged, however, in this case. If the act is unconstitutional, there is no authority for instituting this action at law. We must, therefore, consider the objection which has been raised. If the act is void, the court was without jurisdiction, and it is not necessary to consider any of the other assignments of error upon which defendant relies.

Article 3, § 2, of the Constitution declares that the judicial power shall extend to all cases of admiralty and maritime jurisdiction, and it is said that, in view of this provision in the fundamental law, Congress is without power to substitute for the maritime law regulating the rights of seamen, as known and accepted when the Constitution was adopted, an entirely different and common-law system governing such matters.

In 1861, in The Steamer St. Lawrence, 1 Black, 522, 526, 17 L. Ed. 180, Mr. Chief Justice Taney, writing for the court and referring to the fact that the Constitution delegates to the federal government the judicial power in all cases of admiralty and maritime jurisdiction, declares that:

"Certainly no state law can enlarge it, nor can an act of Congress or rule of court make it broader than the judicial power may determine to be its true limits."

The court in that case, however, recognized the power of Congress to alter and change the forms and modes of proceeding in the admiralty courts in matters having no relation to the subject of jurisdiction, and to transfer the trial of seamen's causes from the admiralty to the common-law courts.

[1] The fact that the Constitution extended the judicial power of the federal courts to the admiralty and maritime jurisdiction, and that this meant the admiralty and maritime law at the time the Constitution was adopted, does not preclude Congress from subsequently making alterations in the system of law thus referred to; and it has never been understood that the rights of seamen existing under the maritime law would in all cases have to be asserted in the courts of admiralty to the exclusion of the courts of common law.

Mr. Justice Story, in his Commentaries on the Constitution, referring to the grant of admiralty jurisdiction, wrote as follows:

"The reasonable interpretation would seem to be that it conferred on the national judiciary the admiralty and maritime jurisdiction, exactly according to the nature and extent and modifications in which it existed in the jurisprudence of the common law. When the jurisdiction was exclusive, it remained so; when it was concurrent, it remained so. Hence the states could have no right to create courts of admiralty as such, or to confer on their own courts the cognizance of such cases as were exclusively cognizable in admiralty courts. But the states might well retain and exercise the jurisdiction in cases of which the cognizance was formerly concurrent in

the courts of common law. The latter class of cases can be no more deemed cases of admiralty and maritime jurisdiction than cases of common law." 3 Com. on Const. § 1006.

The fact must therefore be kept in mind that in a certain class of cases affecting the rights of seamen the courts of admiralty and the courts of common law had and still have a concurrent jurisdiction, and that that class of cases are not to be regarded as exclusively pertaining to the admiralty jurisdiction and as such to be heard in an admiralty court, and so are beyond the power of Congress to affect by its legislation.

In the Judiciary Act of 1789 (1 Stat. p. 76, c. 20) the right of the common-law courts was recognized, and it was provided that the federal District Courts should have exclusive jurisdiction of all cases of admiralty and maritime jurisdiction, "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it." And that provision has ever since remained unrepealed. Rev. St. § 563, par. 8 (Comp. St. § 991[3]).

[2] The maritime law afforded two remedies. One was a proceeding in rem, and the other was a proceeding in personam. Where the proceeding was in rem, the jurisdiction of admiralty was exclusive; where it was in personam, the courts of common law had a concurrent jurisdiction. And when a party came into the common-law court with a proceeding in personam, which he might have brought in the admiralty court, the cause was disposed of according to the procedure which governed that class of courts, and was tried with a jury. It certainly cannot now be questioned that the act under which the plaintiff proceeded was in any respect invalid in providing that a seaman who suffers a personal injury in the course of his employment may sue at law and have a right to a trial by jury.

[3] But, while a seaman who was injured in the service of his ship has from the beginning had a right to sue in the common-law court and to have a jury trial, the amount he was entitled to recover was not measured by common-law standards, but by those prescribed by the maritime law. By that law the vessel owner was liable to a seaman injured by the negligence of a member of the crew, whether a superior officer or not, only for his maintenance, cure, and wages. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; Chelentis v. Luckenbach Steamship Co., 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171. The Jones Act, however, extends the seaman's right to recover damages for personal injuries, and applies in such cases the remedy given under the statutes of the United States to railway employees.

In The Lottawana, 21 Wall. 558, 577 (22 L. Ed. 654) the court, referring to the maritime law, said:

"It cannot be supposed that the framers of the Constitution contemplated that the law should forever remain unalterable. Congress undoubtedly has authority under the commercial power, if no other, to introduce such changes as are likely to be needed."

The Congress has, for example, long since changed the rule of unlimited liability imposed upon shipowners by the maritime law, and created a limited liability. This it first did by an act passed March 3,

1851. The matter came before the Supreme Court in The Scotland, 105 U. S. 24, 31 (26 L. Ed. 1001) and Mr. Justice Bradley, referring to the statute, said:

"But it is enough to say, that the rule of limited liability is now our maritime rule. It is the rule by which, through the act of Congress, we have announced that we propose to administer justice in maritime cases."

Again in Butler v. Boston & Savannah Steamship Co., 130 U. S. 527, 9 Sup. Ct. 612, 32 L. Ed. 1017, the statute limiting liability was before the court, and was held applicable to cases of personal injury and death, as well as to cases of loss of or injury to property. In that case certain earlier cases in the court were commented upon, and Mr. Justice Bradley, speaking for the court, said:

"These quotations are believed to express the general, if not unanimous, views of the members of this court for nearly 20 years past, and they leave us in no doubt that, whilst the general maritime law, with slight modifications, is accepted as law in this country, it is subject to such amendments as Congress may see fit to adopt. One of the modifications of the maritime law, as received here, was a rejection of the law of limited liability. We have rectified that. Congress has restored that article to our maritime code. We cannot doubt its power to do this. As the Constitution extends the judicial power of the United States to 'all cases of admiralty and maritime jurisdiction,' and as this jurisdiction is held to be exclusive, the power of legislation on the same subject must necessarily be in the national Legislature, and not in the state Legislatures. It is true, we have held that the boundaries and limits of the admiralty and maritime jurisdiction are matters of judicial cognizance, and cannot be affected or controlled by legislation, whether state or national. Chief Justice Taney, in The St. Lawrence, 1 Black, 522, 526, 527; The Lottawana, 21 Wall. 558, 575, 576. But within these boundaries and limits the law itself is that which has always been received as maritime law in this country with such amendments and modifications as Congress may from time to time have adopted."

In Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145, the court had before it the Act of October 6, 1917, c. 97, 40 Stat. 395 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 991[3], 1233), which sought to amend section 9 of the Judiciary Act of 1789, hereinbefore cited. Section 9 of the Act of 1789 granted to the United States District Courts, as we have already pointed out, exclusive jurisdiction of all civil causes of admiralty and maritime jurisdiction, "saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it." The Act of 1917 added to the above provision, "and to claimants the rights and remedies under the Workmen's Compensation Law of any state." The Supreme Court held, Justices Holmes, Pitney, Brandeis, and Clarke dissenting, that this attempted amendment was unconstitutional, as being a delegation of the legislative power of Congress to the states, and as defeating the purpose of the Constitution respecting the harmony and uniformity of the maritime law. The majority opinion, however, conceded the right of Congress to alter the rules of the maritime law. Referring to the intention of the framers of the Constitution to commit direct control of the maritime jurisdiction to the federal government, and to have a harmonious and uniform system of maritime law, Mr. Justice McReynolds, writing for the majority of the court, said:

"Considering the fundamental purpose in view and the definite end for which such rules were accepted, we must conclude that, in their characteristic features and essential international and interstate relations, the latter may not be repealed, amended, or changed, except by legislation which embodies both the will and deliberate judgment of Congress. The subject was intrusted to it, to be dealt with according to its discretion—not for delegation to others. To say that, because Congress could have enacted a compensation act applicable to maritime injuries, it could authorize the states to do so as they might desire, is false reasoning. Moreover, such an authorization would inevitably destroy the harmony and uniformity which the Constitution not only contemplated, but actually established—it would defeat the very purpose of the grant. See Sudden & Christenson v. Industrial Accident Commission, 188 Pac. 803."

The Supreme Court, in The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358, where the subject was elaborately considered in an opinion written by Chief Justice Waite, unanimously held that an action would not lie in the courts of the United States under the general maritime law to recover damages for the death of a human being on navigable waters. And see The Albert Dumois, 177 U. S. 240, 259, 20 Sup. Ct. 595, 44 L. Ed. 751. In The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264, the court held, however, that in a proceeding in admiralty effect would be given to a state statute giving damages for death occurring in a collision at sea between two vessels which belonged to corporations of the state of Delaware which passed the statute. And this doctrine was adhered to and applied in La Bourgogne, 210 U. S. 95, 28 Sup. Ct. 664, 52 L. Ed. 973, which was a French vessel which sank at sea in a collision with a British vessel. It appeared that the law of France, the Code Napoléon, gave a right of action for wrongful death. It is very evident, therefore, that it must be within the power of Congress to change the maritime law by giving a right of action in case of death upon waters within the admiralty jurisdiction of the United States.

And if the Congress, as we have seen it has, has the power to limit the liability of the ship or its owners within the admiralty and maritime jurisdiction of the United States, it must by the same process of reasoning have the right to otherwise alter or increase that liability. And we see no reason to doubt that Congress possesses the power to declare that shipowners shall be subject to the same measure of liability for injuries suffered by the crew while at sea as the common law prescribes for employers in respect to their employees on shore, and that it may specifically provide that statutes applying to personal injury actions of railway employees shall apply to similar actions by seamen.

[4] Neither can there be any serious question raised as to the right of Congress to incorporate in an act other statutes by reference to them. Such statutes have been sustained so uniformly that the power of Congress is not now open to argument. The object of such incorporation, as was said in the Binghamton Bridge, 3 Wall. 51, 79, 18 L. Ed. 137, is to avoid incumbering the statute book by useless repetition and unnecessary verbiage. See People v. Crossley, 261 Ill. 78, 103 N. E. 537; Turney v. Wilton, 36 Ill. 385; Garland v. Hickey, 75 Wis. 178, 43 N. W. 832; Quinlan v. Houston, etc., R. Co., 89 Tex. 356, 34 S. W. 738; Spring Valley Water Works v. San Francisco, 22

Cal. 434. In some of the state Constitutions it has been provided that no act shall be passed incorporating an existing law, except by inserting it therein. But the Constitution of the United States contains no such provision.

[5] It remains to point out that certain other objections have been raised to the validity of the Jones Act; but, before referring to them, we deem it necessary to call attention to certain fundamental and well-established principles, which it is necessary to keep in mind, and by which we must be governed. It is the duty of every judicial tribunal to determine rights of persons or property which are actually involved in the particular case before it. As the Supreme Court had occasion to say in California v. San Pablo & Tulare Railroad, 149 U. S. 308, 314, 13 Sup. Ct. 876, 878 (37 L. Ed. 747):

> "The court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. No stipulation of parties, or counsel, whether in the case before the court, or in any other case, can enlarge the power, or affect the duty, of the court in this regard."

See Lord v. Veazie, 8 How. 251, 12 L. Ed. 1067; Cleveland v. Chamberlain, 1 Black, 419, 17 L. Ed. 93; Kimball v. Kimball, 174 U. S. 158, 19 Sup. Ct. 639, 43 L. Ed. 932; Tyler v. Judges of Court of Registration, 179 U. S. 405, 408, 21 Sup. Ct. 206, 45 L. Ed. 252.

[6] It is necessary for the plaintiff to show that the alleged unconstitutional features of the law injure him, and so operate as to deprive him of rights secured to him by the Constitution. Southern Railway Co. v. King, 217 U. S. 524, 534, 30 Sup. Ct. 594, 54 L. Ed. 868; Hatch v. Reardon, 204 U. S. 152, 160, 27 Sup. Ct. 188, 51 L. Ed. 415, 9 Ann. Cas. 736; Hooker v. Burr, 194 U. S. 415, 24 Sup. Ct. 706, 48 L. Ed. 1046; Middleton v. Texas Power & Light Co., 249 U. S. 152, 156, 157, 39 Sup. Ct. 227, 63 L. Ed. 527; and this the defendant herein has not done. In Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 576, 35 Sup. Ct. 167, 59 L. Ed. 364, the court declared it to be the well-settled rule of the court that it only hears objections to the constitutionality of laws from those who are themselves affected by the alleged unconstitutionality in the feature complained of. And see Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 544, 34 Sup. Ct. 359, 58 L. Ed. 713; Rosenthal v. New York, 226 U. S. 260, 271, 33 Sup. Ct. 27, 57 L. Ed. 212, Ann. Cas. 1914B, 71.

In the Arizona Employers' Liability Cases, 250 U. S. 400, 39 Sup. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537, the constitutionality of the state statute was assailed on the ground that the act made no distinction between hazardous and nonhazardous industries and was on that account invalid, but the court declared that the plaintiff in error had no standing to raise the question as to whether the occupations in which the actions arose were indisputably hazardous. And in the same case the objection was also made that the benefits of the act could be extended in the case of death claims to those not nearly related or dependent upon the workman and might even go by escheat to the state. In reply the court declared that no such construction had been put upon the

act, and that it was sufficient to say that no such question was in the records and that it was improper for the Supreme Court to assume in advance that the state courts would place such a construction upon the statute as to render it obnoxious to the federal Constitution.

In a recent case, National Harness Mfgrs.' Association v. Federal Trade Commission, 268 Fed. 705, the Circuit Court of Appeals for the Sixth Circuit held that a party cannot complain of invalid sections of a statute where such sections are not invoked against him. In that case a petitioner seeking review of an order by the Federal Trade Commission requiring the petitioner to desist from certain practices was held unable to raise the question that the inquisitorial features of the Federal Trade Commission Act violated the Constitution, where the commission had not attempted to exercise against him the alleged invalid sections of the act. The court declared that it was enough to say that the provisions assailed were not before the court.

[7] The Jones Act is said to be unconstitutional, in that it provides that:

"All statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."

And because it further provides, in giving a right of action in case of death of any seaman as a result of personal injury, that in such action:

"All statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable."

As respects the provision relating to death cases, it is apparent that, as this action is not brought to recover for the death of a seaman, the question as to the constitutionality of that provision cannot be raised upon this record.

As respects the provision that "all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply," it is argued that it is a piece of hasty and ill-considered legislation, and so vague and uncertain that no shipowner can tell what his duties are, and no seaman can tell what his rights are. It is said that in particular cases it would be impossible for the court to determine what provisions of law are applicable and what special statute for the benefit of railway employees is the basis of the action. Then we are told that it is well settled that if a statute is doubtful and uncertain, or is such as to make it difficult or impossible to comply with its provisions, it will be held to be of no force and effect. It is added that the phrase "all statutes," etc., would make applicable not merely the federal Employers' Liability Act of April 22, 1908 (35 Stat. 65, c. 149 [Comp. St. §§ 8657–8665]), but the Safety Appliance Act of March 2, 1903 (32 Stat. 943, c. 976 [Comp. St. §§ 8613–8615]), and the Boiler Inspection Act of February 17, 1911 (36 Stat. 913, c. 103 [Comp. St. § 8630 et seq.]), and the Hours of Service Act of March 3, 1907 (34 Stat. 1415, c. 2939 [Comp. St. §§ 8677–8680]). The answer to all this is that the court below did not apply, and was not asked to apply, any of these

acts, except certain provisions in the federal Employers' Liability Act. Whether there are provisions in any of the other acts named which were intended to be included in the Jones Act, and which make it invalid, is not before the court upon this record, and need not be considered, as neither the plaintiff nor the defendant has been affected by them in any manner in this action.

It is necessary now to consider the validity of the federal statute which was directly involved in the case now before the court, and which actually affected the rights of the parties. That we may understand in what manner the rights of the parties were actually affected, a consideration of the principles of the admiralty law applicable to cases of this character prior to the enactment of the Jones Act is important. The rules of the admiralty law governing injuries to seamen were stated in The Osceola, 189 U. S. 158, 175, 23 Sup. Ct. 483, 487 (47 L. Ed. 760) as follows:

"(1) That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued.

"(2) That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. Scarff v. Metcalf, 107 N. Y. 211, 13 N. E. 796, 1 Am. St. Rep. 807.

"(3) That all the members of the crew, except perhaps the master, are, as, between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure.

"(4) That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident."

It thus appears that under maritime law a seaman was not allowed to recover anything more than his maintenance and cure and his wages for injuries resulting from accident or the negligence of the master or a member of the crew; but that he might recover an indemnity for injuries due to the unseaworthiness of the ship, or resulting from a failure to supply and keep in order the proper appliances appurtenant to the ship.

The present case was tried in the court below upon the theory that by reason of the Jones Act the federal Employers' Liability Act applied. That act in section 2 made a common carrier by railroad liable in damages to any person suffering injury while he is employed by such carrier, and provided that he might maintain an action at law with the right of trial by jury. It was supposed that, by virtue of the provisions cited from the federal Employers' Liability Act, the right of the seaman to recover indemnity or damages is no longer restricted to seamen who receive injuries due to the ship's unseaworthiness, or which result from a failure to supply and keep in order the ship's appliances, and that the right to sue for damages is now given to seamen who suffer injuries in the course of their employment.

[8] The rules of the admiralty as laid down in the Osceola Case differ in certain particulars, while they correspond in others, from

the principles of the common law; and in view of the changes introduced into the maritime law by the Jones Act and the Employers' Liability Act we deem it important to refer to them inasmuch as their validity has been challenged in this action. At common law a master was not liable for injuries personally suffered by his servant through the negligence of a fellow servant while engaged in the same common employment. In admiralty the same general rule prevailed, and the seaman was not entitled to recover in an indemnity suit, if his injuries resulted from the negligence of a fellow servant. This was made very plain by Judge Addison Brown in The City of Alexandria (D. C.) 17 Fed. 390. The same doctrine was applied in Quebec Steamship Co. v. Merchant, 133 U. S. 375, 378, 10 Sup. Ct. 397, 399 (33 L. Ed. 656), where Justice Blatchford, writing for the court, said:

"The case, therefore, falls within the well-settled rule, as to which it is unnecessary to cite cases, which exempts an employer from liability for injuries to a servant caused by another servant. * * *"

That this was the law is also stated in the third rule already quoted from the opinion of The Osceola, supra. But in suits, not for indemnity, but for maintenance and cure, as stated in Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 384, 38 Sup. Ct. 501, 62 L. Ed. 1171, the maritime law imposed upon a shipowner liability to a member of the crew injured at sea by reason of another member's negligence without regard to their relationship.

The Employers' Liability Act in section 2 makes a common carrier by railroad liable in damages to an employee where the injury results in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. It also makes the carrier liable for an injury to the employee arising from any defect or insufficiency due to its negligence "in its cars, * * * appliances, machinery, * * * boats, * * * or other equipment." 35 Stat. p. 65, c. 149. And in the Act of March 4, 1915, 38 Stat. p. 1164, c. 153, § 20 (Comp. St. § 8337a), it was provided that, in any suit to recover damages for any injury sustained on board the vessel or in its service, seamen having command shall not be held to be fellow servants with those under their authority. The fellow servant rule is not, however, invoked in the present action, and we are not further concerned with it.

It was also a principle of the common law that one who understands and appreciates a risk and voluntarily exposes himself to it cannot recover for an injury which results from the exposure. This doctrine of assumption of risk rests on the principle expressed in the maxim "volenti non fit injuria." This doctrine was applied in the admiralty as in other branches of jurisprudence. It was recognized and applied in this court in The Saratoga, 94 Fed. 221, 36 C. C. A. 208, where, referring to the doctrine of assumption of risk, the court said:

"This has been held so many times that it is unnecessary to cite authorities. The principal ones will be found referred to and discussed in the exhaustive opinion of the learned district judge."

The opinion thus referred to is found in (D. C.) 87 Fed. 349.

[9] The federal Employers' Liability Act did not change the rule relating to assumption of risk, except that section 4 of it provides that,

in actions brought against any common carrier under any of the provisions of the act to recover damages for injuries to or the death of any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation enacted for the safety of employees contributed to the injury or death of the employee. The act, therefore, does not abolish the defense of assumption of risk, but leaves the law as it was before, except in cases in which the violation of a statute enacted for the safety of employees contributed to the injury or death. As in this case it is not claimed that any such statute has been violated, we are not at all concerned with it.

[10] It was, too, a rule of the common law laid down in Butterfield v. Forrester, 11 East, 60, a leading case in English law, that one whose own negligence proximately contributes to his injury cannot recover any compensation from the defendant, although the latter's primary negligence caused the injury complained of. And see Railroad Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506. But the courts of admiralty did not allow the contributory negligence of the defendant to defeat his suit. As was said by Justice Story in The Palmyra, 12 Wheat. 1, 17, 6 L. Ed. 531, in the admiralty the award of damages always rests in the sound discretion of the court under all the circumstances. So that in cases of contributory negligence the admiralty court grants damages, if it appears to it that to do so is in accordance with principles of equity and justice. 1 C. J. 1327.

The Employers' Liability Act changed the common-law rule on the subject of contributory negligence by providing in section 3 that in actions brought under the act the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. But, while this changed the rule of the common law, it adopted the rule of the admiralty courts. It, however, also provided:

"That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

With this last provision we are not concerned in this case, for, as before remarked, it has not been claimed that any statute was violated by the shipowner; and with the first provision we are not concerned as it merely adopts the maritime rule.

[11] Unless it was beyond the power of Congress to modify the maritime law in the particulars in which it was modified by making the Employers' Liability Act applicable to a case of this nature, the Jones Act must be held valid so far as it is involved in this suit. We entertain no doubt but that it was within the authority of Congress by the Jones Act to make the Employers' Liability Act applicable to seamen injured upon navigable waters within the maritime jurisdiction of the United States. As declared in Southern Pacific Co. v. Jensen, 244 U. S. 205, 215, 216, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, and repeated in Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 381, 38 Sup. Ct. 501, 62 L. Ed. 1171,

Congress has paramount power to fix and determine the maritime law which shall prevail in this country. The system of maritime law as changed is still coextensive with and operating uniformly in the whole of the United States. The changes introduced into the system by making the Employers' Liability Act applicable to seamen who suffer personal injury in the course of their employment does not violate any constitutional right of the defendant and does not exceed the powers of the Congress.

This brings us to a consideration of certain errors which it is claimed were committed by the District Judge in his charge to the jury. The jury was instructed as follows:

"The law further provides in any action brought under this law to recover damages for injuries an employee shall not be held to have assumed the risks of his employment in any case where the violation by the employer of the statute enacted for the safety of employees contributed to the injury of the employee; that is to say, he assumes such ordinary risks of his job or employment as are known to him, or that he becomes familiar with, and that you conclude he must become familiar with in the ordinary course of the employment, except that he does not assume the risk that results from carelessness on the part of his superior, or for negligence, from defects or insufficiency of the appliances and equipment that are provided for carrying on his work."

And as to this there are two assignments of error as follows:

"Fifth. The court erred in declining to charge the jury, if the railroad statute controlled, that if the plaintiff knew the character of the ladder, and used it from time to time he assumed the risk of any accident which happened to him in using the ladder under the known conditions.

"Sixth. The court erred in declining to charge the jury, if the railroad statute controlled, that the assumption of the risk was an absolute defense."

It was claimed that the plaintiff, who met his injuries in falling from the ladder, had been employed upon the ship 17 months and was entirely familiar with the ladder; and it is said that, except where the risk is created by the violation of a statutory rule, railroad employees assume the risk under the federal Employers' Liability Act just as they did at common law. The Supreme Court has held in a number of cases that assumption of risk is a bar to the action in a case governed by the federal Employers' Liability Act. Pryor v. Williams, 254 U. S. 43, 41 Sup. Ct. 36, 65 L. Ed. 120; Boldt v. Pennsylvania R. Co., 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385; Erie R. Co. v. Purucker, 244 U. S. 320, 37 Sup. Ct. 629, 61 L. Ed. 1166; Chesapeake & Ohio Ry. Co. v. Detley, 241 U. S. 310, 36 Sup. Ct. 564, 60 L. Ed. 1016; Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970; Seaboard Air Line Railway v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.

We have, however, already seen that the doctrine of assumption of risk does not owe its origin to the federal Employers' Liability Act. It existed, both at common law and in the admiralty before that act was passed, and section 4 of the act merely eliminated the defense of assumption of risk in the cases indicated therein. It has been said that assumption of risk rests upon contract. George v. St. Louis & S. F. R. Co., 225 Mo. 364, 125 S. W. 196; Buena Vista Extract Co. v. Hickman, 108 Va. 665, 62 S. E. 804; Miller v. White Bronze Monu-

289 F.—62

ment Co., 141 Iowa, 701, 118 N. W. 518, 18 Ann. Cas. 957; Diamond Block Coal Co. v. Cuthbertson, 166 Ind. 290, 76 N. E. 1060; Poole v. American Linseed Co., 119 App. Div. 136, 103 N. Y. Supp. 1047, 1048; Western Furniture & Mfg. Co. v. Bloom, 76 Kan. 127, 90 Pac. 821, 11 L. R. A. (N. S.) 225, 123 Am. St. Rep. 123; Johnson v. Mammoth Vein Coal Co., 88 Ark. 243, 114 S. W. 722, 123 S. W. 1180, 19 L. R. A. (N. S.) 646. It is said to involve an implied agreement by the employee to assume the risk. Hall v. Northwestern R. Co., 81 S. C. 522, 62 S. E. 848. On the other hand, it is denied that the doctrine rests upon contract, or depends in any manner upon the agreement of the parties. It is said to be founded upon public policy. Denver & R. G. R. Co. v. Norgate, 141 Fed. 247, 253, 72 C. C. A. 365, 6 L. R. A. (N. S.) 981, 5 Ann. Cas. 448; Denver & R. G. R. Co. v. Gannon, 40 Colo. 195, 90 Pac. 853, 11 L. R. A. (N. S.) 216; Rase v. Minneapolis, St. P., etc., R. Co., 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N. S.) 138; Osterhohn v. Boston & Montana Consol. Copper & Silver Mining Co., 40 Mont. 508, 107 Pac. 499.

In Narramore v. Cleveland, C., C. & St. L. Ry. Co., 96 Fed. 298, 301, 37 C. C. A. 499, 501 (48 L. R. A. 68) Judge Taft, writing for the Circuit Court of Appeals of the Sixth Circuit, said:

" 'Assumption of risk' is a term of the contract of employment, express or implied from the circumstances of the employment, by which the servant agrees that dangers of injury obviously incident to the discharge of the servant's duty shall be at the servant's risk. In such cases the acquiescence of the servant in the conduct of the master does not defeat a right of action on the ground that the servant causes or contributes to cause the injury to himself; but the correct statement is that no right of action arises in favor of the servant at all, for, under the terms of the employment, the master violates no legal duty to the servant in failing to protect him from dangers the risk of which he agreed expressly or impliedly to assume."

In St. Louis Cordage Co. v. Miller, 126 Fed. 495, 502, 61 C. C. A. 477, 484 (63 L. R. A. 551) Judge Sanborn, writing for the Circuit Court of Appeals of the Eighth Circuit, said:

"Assumption of risk is the voluntary contract of an ordinarily prudent servant to take the chances of the known or obvious dangers of his employment, and to relieve his master of liability therefor."

In Jellow v. Fore River Ship Building Co., 201 Mass. 464, 467, 87 N. E. 906, 908, the Supreme Judicial Court of Massachusetts said on this same subject:

"It should not be overlooked that, where the use of the terms 'risk' and 'acceptance of the risk' are involved, the true question is whether, in incurring the particular danger in question, the plaintiff accepted the risk in the sense that by continuing at his work he agreed to relieve the defendant from the possible results. The plaintiff, consequently, not only must be shown to have known of the risk, but, by implication from his conduct, must be found to have voluntarily assumed it. Wagner v. Boston Elevated Railway, 188 Mass. 437, 440, 441, and cases cited."

[12] That the act of the servant in assuming the risk must have been voluntary and not under constraint is well-established law. In Shearman & Redfield on Negligence, vol. 1 (6th Ed.) sec. 207, the law is said to be that:

"A risk must be voluntarily assumed, to relieve the master from liability. Risks incurred under coercion are not assumed."

And in section 211a it is said:

"As already stated, it is now held by the most conservative authorities that a servant is not deprived of his right to recover for defects caused by his master's negligence, arising or first coming to the servant's notice, after he has entered into service, unless he assumes the risk of his own free and unconstrained will. If, therefore, he continues to incur the risk of such defects, under any kind of necessity, or coercion, he does not voluntarily assume the risk, and is not, necessarily, debarred from recovery thereby."

See Richmond, etc., Ry. Co. v. Norment, 84 Va. 167, 4 S. E. 211, 10 Am. St. Rep. 827; O'Maley v. South Boston Gaslight Co., 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161; Lee v. St. Louis, M. & S. E. R. Co., 112 Mo. App. 372, 87 S. W. 12; Rase v. Minneapolis, St. Paul, etc., R. Co., 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N. S.) 138; Montgomery v. Seaboard Air Line Ry., 73 S. C. 503, 53 S. E. 987; Elie v. Cowles, 82 Conn. 236, 73 Atl. 258.

And in Labatt on Master and Servant, vol. 4 (2d Ed.) § 1365, p. 3934, it is said:

"If a danger is not so absolute or imminent that injury must almost necessarily result from obedience to an order, and the servant obeys the order and is injured, the master will not afterwards be allowed to defend himself on the ground that the servant ought not to have obeyed the order."

In considering whether the plaintiff voluntarily assumed the risk we may consider the nature of his employment. This man was a seaman, and was injured while obeying an order given him by an officer of his ship, and which directed him to climb the ladder. It is the duty of seamen to remain with the ship and to act in obedience to the commands of the master. Disobedience of orders by a seaman may involve him in serious consequences, and subject him to possible forfeiture of the wages previously earned and to imprisonment by the master. And if he leaves the ship without the master's consent and just cause he in like manner forfeits his wages and is liable to imprisonment. See The City of Norwich (C. C. A.) 279 Fed. 687, 699.

[13] A master of a vessel has authority to enforce discipline on his ship, and to compel the obedience of seamen and may inflict corporal punishment upon them. In 20 Am. & Eng. Ency. of Law, p. 203, it is laid down that his authority in this respect "is of a summary character, and somewhat resembles that of a parent over his children, a master over his servants or apprentices, or a schoolmaster over his scholars." This power he has in order to maintain the good order and discipline of the ship. And as a means of punishment he may imprison or confine a seaman on the vessel. And the misconduct of a seaman may work a forfeiture of wages previously earned. 35 Cyc. 1224. In cases of an aggravated character, it may involve, also, an absolute forfeiture of his clothing and effects on board the ship. It is the duty of a seaman to remain with the ship to the expiration of his term of service, and if he quits the ship without justifiable cause he also forfeits his wages already earned and his effects on board the ship.

All these circumstances must be considered in determining whether the plaintiff, in obeying the order given him, can be said voluntarily to have assumed the risk which was involved. We do not think it can be said that as a matter of law the risk involved in obeying the order was so absolute or imminent that a person of ordinary prudence similarly situated would have disobeyed it, or that the plaintiff should be held voluntarily to have assumed it. We do not think that under the circumstances the defendant can be heard to say that the plaintiff ought not to have obeyed the order, or that in obeying it he voluntarily assumed the risk. As was said by the New York Court of Appeals in Scarff v. Metcalf, 107 N. Y. 211, 215, 13 N. E. 796, 797 (1 Am. St. Rep. 807):

"The master's authority is quite despotic and sometimes roughly exercised, and the conveniences of a ship out upon the ocean are necessarily narrow and limited. That which on land would be contributory negligence the maritime law scarcely recognizes and readily excuses (The City of Alexandria, 17 Fed. 390, 395), and in many ways throws its protection around the seaman."

[14] There is, however, no necessity for basing this decision on the doctrine that the plaintiff cannot be regarded as having voluntarily assumed the risk. The maritime law imposed upon the shipowner the risk incident to the use of defective and dangerous appliances, and we see nothing in the new legislation which changes the law in this regard. The federal Employers' Liability Act did not create the law. It simply recognizes it as it already existed and restricted it in the classes of cases embraced in section 4 of the act. What the law previously was is stated by this court in Cricket S. S. Co. v. Parry (C. C. A.) 263 Fed. 523, in which we held that a shipowner cannot avoid liability for injury to a seaman by a defective and dangerous appliance, on the ground that the seaman knew of the defect when he shipped. We declared in that case that, if a shipowner supplied a defective and dangerous appliance when a proper one could not be obtained, he did so at his own risk and not at the risk of the seaman. There are cases in the other circuits holding the same doctrine. The Fullerton, 167 Fed. 1, 92 C. C. A. 463; The Colusa, 248 Fed. 21, 160 C. C. A. 161 (both in the Ninth Circuit); Globe S. S. Co. v. Moss (6th Cir.) 245 Fed. 54, 157 C. C. A. 350; Lafourche Packet. Co. v. Henderson (5th Cir.) 94 Fed. 871. The law as laid down in the above cases is amply sufficient to justify the plaintiff's position that he did not assume the risk arising from the insufficient and dangerous apparatus which the shipowner furnished at its and not the plaintiff's risk.

[15] The defendant charges error in that portion of the charge in which reference was made to a canvas or weather dodger stretched above the bridge rail and in front of the ladder and at the top of it. But what we have already said concerning the shipowner's liability for defective appliances makes it unnecessary to comment upon that portion of the charge referred to, for, if the court erred, its error certainly did not prejudice the defendant.

Judge MAYER authorizes the writer to say that, while he concurs

in this opinion, he expresses some doubt as to the constitutionality of the act in so far as it incorporates other statutes, not by specific reference, but by the general reference to statutes of the United States "modifying or extending the common-law right or remedy in cases of personal injury to railway employees. * * *"

Judgment affirmed.

### On Rehearing.

A decision in this case was filed in this court on February 15, 1923, and is set forth above. At the time the case was argued in this court the jurisdictional question was not called to our attention. We therefore, ex mero motu, directed a reargument upon that question, after our decision on the merits was handed down, and that is the sole question now to be considered.

The plaintiff below is a seaman, who sued the defendant in a common-law action to recover indemnity for personal injuries suffered by him at sea upon a vessel owned by the defendant company. The action was brought under the Merchant Marine Act of June 5, 1920, otherwise known as the Jones Act. 41 St. p. 988, c. 250. Section 33 of that act gives to any seaman who suffers personal injury in the course of his employment the right at his election to maintain an action for damages at law, with the right of trial by jury, and provides that in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply, and it further provides:

"Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

The action was brought in the Eastern district of New York. The plaintiff alleged in his complaint that he is a resident of the borough of Brooklyn, city and state of New York. Brooklyn is within the Eastern district of New York. But the plaintiff also alleged, although upon information and belief, that the defendant is a domestic corporation having its principal office and place of business in the borough of Manhattan, city and state of New York. The answer did not deny the above allegation, and, as the borough of Manhattan is in the Southern district of New York, the suit was not brought in the district of the defendant's principal place of business, and the question arises whether the action can be maintained—the record failing to disclose that the question of jurisdiction was raised by the defendant in the court below. Did the defendant waive jurisdiction, by not entering a special appearance and pleading to the jurisdiction?

[16] It is well-settled law that the jurisdiction of courts over the persons of the parties to the suit is one of personal privilege, and if a party appears, failing to make objection to the jurisdiction over his person in limine, the objection is waived. Rhode Island v. Massachusetts, 12 Pet. 657, 9 L. Ed. 1233; Toland v. Sprague, 12 Pet. 300, 9 L. Ed. 1093; Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237. The failure to object at the proper time is a waiver of what is a personal privilege, and is a consent to the jurisdiction. It is the rule that a general appearance confers jurisdiction in personam over the per-

son so appearing. Shields v. Thomas, 18 How. 253, 15 L. Ed. 368; Kerp v. Michigan, etc., R. R. Co., 14 Fed. Cas. 382, No. 7,727; Pond v. Vermont Valley R. Co., 19 Fed. Cas. 976, No. 11,265; Fife v. Bohlen (C. C.) 22 Fed. 878; 4 C. J. 1352.

[17] Another question is presented, where a court has no lawful power to act by reason of the fact that it is without jurisdiction over the subject-matter of the litigation. Where a court has no jurisdiction over the subject-matter, it cannot be conferred by consent of parties. This want of jurisdiction of the subject-matter cannot be waived by a failure to raise the objection in limine, or at any particular stage of the proceedings. The want of such jurisdiction may be raised, even on appeal. In re Winn, 213 U. S. 458, 29 Sup. Ct. 515, 53 L. Ed. 873; Andrews v. Andrews, 188 U. S. 14, 23 Sup. Ct. 237, 47 L. Ed. 366; Creighton v. Kerr, 20 Wall. 8, 22 L. Ed. 309. And the appellate court may itself ex mero motu raise the objection and dismiss the bill.

The fundamental question, therefore, is: Did the District Court have jurisdiction of the subject-matter? Section 24 of the Judicial Code (Comp. St. § 991), so far as it is material to the question under consideration, provides as follows:

"The District Courts shall have original jurisdiction as follows:
"First. Of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of three thousand dollars, and (a) arises under the Constitution or laws of the United States. * * *"

[18] The section gives the District Courts original jurisdiction "of all suits of a civil nature at common law or in equity" arising "under the Constitution or laws of the United States." The language of the Judiciary Act of September 24, 1789 (Stat. 73), which established the judicial courts of the United States, provided in section 11 that the Circuit Courts should have original cognizance "of all suits of a civil nature at common law or in equity. * * *" The clause, "all suits of a civil nature at common law," has long been embodied in the statutes of the United States defining the jurisdiction of the federal courts. Its meaning is well established, and it is the settled doctrine that, whenever any statute is passed which authorizes the commencement of a civil suit, and under which a suit can be maintained at law, jurisdiction cannot be defeated because the suit could not have been maintained in that form at the common law when the United States came into existence as a nation or prior to the enactment of the statute. United States v. Block, 24 Fed. Cas. 1176, No. 14,610.

The Seventh Amendment of the Constitution declares that in suits at "common law" the right of trial by jury shall be preserved. The phrase "common law," as the Supreme Court has held, gives the right to a jury trial, not merely in such suits as the common law recognized "among its old and settled proceedings," but in suits in which legal rights were to be ascertained and determined, in contradistinction to those in which equitable rights alone were recognized and equitable remedies were administered, or in the courts of admiralty which proceeded in part upon equitable principles. Parsons v. Bedford, 3 Pet. 433, 446, 7 L. Ed. 732. And in United States v. Holliday, 3 Wall.

407, 414, 415 (18 L. Ed. 182), Mr. Justice Miller, speaking for the Supreme Court and referring to the provisions in the Judiciary Act of 1789 creating the federal courts and defining their jurisdiction, declared that it could not be supposed that "it was intended to limit the grant to such cases as were then cognizable in those courts," and held that section 12 of that act, defining jurisdiction, was prospective and embraced all cases the jurisdiction of which might be vested in the District Courts by subsequent statutes. And see Brisenden v. Chamberlain (C. C.) 53 Fed. 307; Kirby v. Chicago, etc., R. Co. (C. C.) 106 Fed. 551.

The Jones Act, by section 33, as we have seen, gives to any seaman who suffers personal injury in the course of his employment the right, if he so elects, to maintain an action for damages at law, with the right of trial by jury. If it be assumed that he had no such right previously, then the right is one arising under a law of the United States, and the amount in controversy being in excess of $3,000, and the suit being of a civil nature, it would seem to be clearly within the original jurisdiction of the District Court, as conferred by section 24 of the Judicial Code, so far as the subject-matter of the suit is concerned.

[19] And when the subject-matter of the action is within the jurisdiction of the court, the requirement that the action be brought within a particular district may be waived. United States v. Hvoslef, 237 U. S. 1, 35 Sup. Ct. 459, 59 L. Ed. 813, Ann. Cas. 1916A, 286; Thames & Mersey Marine Insurance Co. v. United States, 237 U. S. 19, 35 Sup. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915D, 1087; Interior Construction Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, 40 L. Ed. 401. Where a suit arises under the Constitution or laws of the United States, and the requisite amount is involved, it comes within the general jurisdiction of the District Courts, and where the case as thus explained is within the general jurisdiction of the court, the restriction that *no* civil suit shall be brought in *any* district against *any* person in *any* other district than, etc., merely establishes a personal privilege, which the defendant may waive. General Investment Co. v. Lake Shore & Michigan Southern Railway Co., 260 U. S. 261, 43 Sup. Ct. 106, 67 L. Ed. ——, decided by the Supreme Court on November 27, 1922; Lee v. Chesapeake & Ohio Railway Co., 43 Sup. Ct. 230, 67 L. Ed. ——, decided by the Supreme Court on January 22, 1923, and not yet [officially] reported, which expressly overrules Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264. These cases construe section 51 of the Judicial Code (Comp. St. § 1033), which provides, subject to exceptions not material here, that:

"* * * No civil suit shall be brought in any District Court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

And in the General Investment Co. Case the court, in passing upon the above section, said:

"This restriction, as repeatedly has been held, does not affect the general jurisdiction of a District Court over a particular cause, but merely establishes

a personal privilege of the defendant, which he may insist on, or may waive, at his election, and does waive, where suit is brought in a district court, other than the one specified, if he enters an appearance without claiming his privilege."

[20] We therefore conclude that the provision in the Jones Act, which states that "jurisdiction in such action shall be under the court of the district in which the defendant employer resides, or in which his principal office is located," relates, not to the jurisdiction over the subject-matter of the action, but to the jurisdiction over the person, and that the provision must be understood as merely establishing a personal privilege, which the defendant may insist on or may waive at his election, and does waive where suit is brought in a district other than the one specified if he enters an appearance without claiming his privilege.

In Re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164, it was held that where there was a diversity of citizenship which gave jurisdiction to some Circuit Court, the objection that there was no jurisdiction in a particular district might be waived by appearing and pleading to the merits. Where, however, upon the face of the record, no court of the United States has jurisdiction of the controversy, original or by removal, the consent of the parties cannot confer jurisdiction. In re Winn, 213 U. S. 458, 469, 29 Sup. Ct. 515, 53 L. Ed. 873; Louisville & Nashville R. R. Co. v. Mottley, 211 U. S. 149, 29 Sup. Ct. 42, 53 L. Ed. 126.

In Leon v. United States Shipping Board, 286 Fed. 681, Judge Mayer, sitting in the Southern District of New York, held that under the Jones Act the action had to be brought in the district where the employer resides or has his principal place of business. But the defendant in that case appeared specially and moved that the action be dismissed on the ground of lack of jurisdiction. In other words, the defendant in that case elected to insist upon its privilege, and did not consent to waive it by appearing generally and failing to object. That case is plainly distinguishable from the case now before the court.

In Barrington v. Pacific S. S. Co. (D. C.) 282 Fed. 900, the provision in the Jones Act was construed differently in the District Court for the state of Oregon. In that case it was decided that no other court has jurisdiction of a suit brought under the act except the court of the district in which the defendant resided or in which his principal office is located, and in reaching its conclusion the court attached much importance to the word "shall," and thought it showed an intent to constitute the court in all such actions a court of special and not general jurisdiction. The court said:

"The mandatory language of the statute indicates as much. Mark the language: 'Jurisdiction in such actions "shall" be under the court of the district,' etc."

We are unable to concur in the conclusion reached in the Oregon case, and we are unable to see why the word "shall," as found in the Jones Act, should have any greater significance than the Supreme Court has attached to the same word as found in section 51 of the Judicial Code.

We think that the District Court for the Eastern District of New York had jurisdiction of this action, although it was not brought in the district in which the defendant resides or in which its principal office is located; the defendant having waived its privilege of requiring the suit to be brought in the district of its residence by not having appeared specially and objected to the jurisdiction. We see no reason, therefore, why the opinion of this court previously rendered, affirming the judgment below, should be set aside.